CATHERINE DULLIGAN, administratrix, *vs.* BARBER ASPHALT
PAVING COMPANY.

Middlesex.   December 7, 1908. — February 26, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability, Causing death. *Practice, Civil,* New trial.

In an action at common law by the administrator of the estate of a workman for conscious suffering of the plaintiff's intestate caused by the alleged negligence of the defendant, an asphalt paving company, while the plaintiff's intestate was in its employ, there was evidence from which it could be found that, the night before the accident, the plaintiff's intestate, who theretofore had been employed in another branch of the work in a different place, was set at work by the defendant's superintendent at the asphalt tanks, of which there were three, under each of which was a furnace, each tank containing asphalt and other materials and being fitted with a lid or cover, that the superintendent directed the intestate to keep the covers open on a clear night, and on a rainy night to put a barrel stave under each cover, which would hold them four or five inches up, that the superintendent also gave him directions as to keeping fires under the tanks and handed him a thermometer about five feet in length, for the purpose of taking the temperature of the materials in the tanks, and a lantern, that in order to take the temperature it was necessary for the intestate to climb by a ladder to the top of each tank and examine the thermometer by means of a lighted lantern, that no instruction was given him as to what should be done if the covers were found down, and it did not appear that anything was said as to how often the temperature should be taken, that on the night of the accident when the intestate went to work the covers were down, although it did not appear that he knew of this until he went up the ladder two hours or more later for the purpose of taking the temperature of the materials in one of the tanks, that the materials heated in the tanks generated an explosive gas which when heated or in contact with flame would be likely to cause an explosion, and that on the intestate's opening one of the lids, with the lantern in his hand, an explosion occurred, which caused the injuries from which he afterwards died.   There was evidence of a declaration, made by the intestate shortly after the accident, that he had no knowledge, experience or appreciation of the danger to which he was subjected. *Held,* that there was evidence for the jury of negligence on the part of the defendant in failing to take precautions to provide for the harmless dissipation of the explosive gases likely to be generated in the tanks or to prevent their accumulation in dangerous quantities ; *also,* that there was evidence of due care on the part of the plaintiff's intestate, and that he did not assume the risk of such an injury.

In an action by an administrator for personal injuries to the plaintiff's intestate by the explosion of dangerous gases in a tank of heated asphalt, to which the plaintiff's intestate had been sent by the defendant's superintendent with a long thermometer and a lighted lantern for the purpose of taking the temperature of the materials in the tank, the presiding judge refused to make certain rulings requested by the defendant, which were based on the proposition that, if such an

explosion as that which caused the injury was so infrequent an occurrence as to be unknown to men engaged in the business for a period of years, the defendant was not responsible for it. *Held,* that the requests for rulings were refused rightly, as the absence of previous explosions might have been due to the taking of reasonable precautions to avoid such a calamity, and, moreover, the infrequency of such accidents was not the test of the defendant's liability, as the defendant would be liable for injuries arising from conditions which resulted in an extraordinary or even unprecedented accident, if they were such that no reasonably prudent proprietor would have suffered them to exist.

In an action by an administrator under R. L. c. 106, § 72, for the loss of life of the plaintiff's intestate by reason of the negligence of a superintendent of the defendant, resulting in fatal injuries to the plaintiff's intestate from the explosion of dangerous gases in a tank of heated asphalt, to which, without previous experience, the plaintiff's intestate had been sent by the superintendent with a long thermometer and a lighted lantern for the purpose of taking the temperature of the materials in the tank and brought about the explosion by lifting the cover of the tank which he found closed, as bearing upon the question whether the superintendent had or ought to have had knowledge that fire was likely to occur from the tanks if the explosive gases were not given a harmless means of escape, evidence that only a few days before the accident one of the tanks had given forth fire may be admitted, within the discretion of the presiding judge, to show that a superintendent in the exercise of reasonable care would have discovered that an explosive compound was generated in the tanks, and the jury could find that the superintendent should have instructed the plaintiff's intestate how he should conduct himself with reference to the use of a lighted lantern if he should find the covers of the tanks down instead of open as they ought to be, and that a failure to give such instruction was negligence.

In an action of tort by an administrator, with two counts joined under St. 1906, c. 370, the first under R. L. c. 106, § 72, for the loss of life of the plaintiff's intestate by reason of the negligence of a superintendent of the defendant, and the second at common law for conscious suffering of the plaintiff's intestate by reason of the defendant's negligence, the presiding judge subject to an exception by the plaintiff ordered a verdict for the defendant on the first count, and subject to an exception by the defendant submitted the case to the jury on the second count. They returned a verdict for the plaintiff on that count, and both the plaintiff and the defendant alleged exceptions. This court overruled the exceptions of the defendant, and ordered that the verdict for the plaintiff on the second count should stand. The court sustained the exceptions of the plaintiff and ordered a new trial on the first count. The plaintiff contended that this new trial should be limited to the question of damages alone, but the court refused to make such a limitation, leaving the question of the defendant's liability under the employers' liability act for the alleged negligence of its superintendent open for trial.

RUGG, J.   This is an action of tort brought by the administratrix of the estate of Thomas Dulligan. The declaration contained two counts. The first was framed to recover for the death of Thomas Dulligan, under R. L. c. 106, occasioned by the negligence of a superintendent of the defendant. The second count was to recover for conscious suffering of the plaintiff's intestate arising

from common law negligence of the defendant. The two counts were joined in one cause of action under St. 1906, c. 370. See *Bartley* v. *Boston & Northern Street Railway,* 198 Mass. 163. In the Superior Court a verdict was directed for the defendant on the first count. The plaintiff's exception brings the correctness of that ruling before us. The defendant excepted to the refusal of the Superior Court to direct a verdict in its favor on the second count * and to give various rulings. Its exceptions bring here the questions thereby raised.

There was evidence tending to show that the plaintiff's intestate was a licensed fireman, and had been employed by the defendant upon another branch of its work in a different locality until the night before the accident, when the superintendent of the defendant placed him at work at the asphalt tank. This apparatus was called a " single car asphalt plant," and consisted of the wheels and frame of a long platform railroad freight car, upon which were placed three tanks for the heating or mixing of asphalt, under each of which was a furnace. Each tank was fitted with a lid or cover. There was also upon the car a gasoline engine and a steam boiler, together with certain other machinery. The defendant's superintendent, when he placed the plaintiff's intestate at work, showed him the steam boiler, and told him to keep the steam up so that nothing would freeze, and showed him also the asphalt tanks, and directed him to keep the covers up on a clear night, and on a rainy night to put in a barrel stave, which would hold them four or five inches up. He also gave directions as to keeping the fires under the asphalt tanks, and handed him a thermometer, for the purpose of taking the temperature of the material in the tanks, and a lantern. In order to take this temperature, it was necessary for him to climb by a ladder to the top of the tanks, and with a lighted lantern examine the thermometer, which was a tube about five feet in length, and which, when he was taking the temperature, protruded about two feet above the tank, the lower part being in the asphalt. No instructions were given as to what should be done if the covers were found down, nor did it appear that anything was said as to how frequently the temperature should be taken. When the plaintiff's intestate

---

* On this count the jury returned a verdict for the plaintiff in the sum of $4,000.

went to work on the night in question the lids of the tanks were closed, although it did not appear that he knew this until he went up on the ladder two hours or more later for the purpose of taking the temperature. On opening one of the lids an explosion occurred, which caused the injuries of which he subsequently died. There was also evidence tending to show that the asphalt and other materials, which were heated in the tanks, generated an explosive gas, which when overheated or in contact with flame would be likely to cause an explosion. The defendant's superintendent testified that in an experience of many years he had never known an explosion of this sort, and did not know that it was likely to occur. This evidence, however, the jury were not bound to believe, and if believed it was not conclusive upon the issues before them.

One question was whether the defendant, in the exercise of reasonable care and skill, ought to have known that it was likely that an explosion would occur unless constant pains were taken to see that the tanks were properly ventilated. It was within the province of the jury to find that, if the defendant was compounding a substance at a considerable heat and was utilizing the chemical processes, set in motion by the application of heat to the asphalt and petroleum product in the tank, it ought, in the exercise of ordinary prudence, to have known that dangerous gases were liable to be generated, and that due care required precautions to be taken for their harmless dissipation and prevention of accumulating in dangerous quantities. *La Fortune* v. *Jolly*, 167 Mass. 170. The second count therefore was properly left to the jury.

The defendant's requests for ruling were rightly refused. The third, fourth, fifth and sixth requests * were based upon the gen-

---

* The rulings requested were as follows :

"3. If an explosion of flame in the process of melting asphalt is of such infrequent occurrence as to be unknown to men engaged in the business for periods of many years, then there is no duty on the part of a company engaged in such a business to warn its employees of the danger of such explosion.

"4. There is no failure of instruction on the part of the defendant because it did not warn the plaintiff of a danger, the occurrence of which was so infrequent as never to have arisen during the whole history of the defendant's business, covering a period of thirteen years.

eral proposition that if the explosion which occasioned the injury was of such infrequent occurrence as to be unknown to men engaged in the business for a period of many years, then the defendant was not responsible for it. This is obviously unsound. Such experience may be weighty evidence, but it is not the final criterion. It might well be that no such explosion had been known of in the defendant's business because proper care had always theretofore been taken to avoid such a calamity. Moreover, the standard, which the law establishes, is the exercise of reasonable prudence, and not experience in or knowledge of accidents of a similar character. The test is whether the conditions, which led to an extraordinary or even unprecedented accident, were such that no reasonably prudent proprietor would have suffered to exist. The particular manifestation of the result of careless conditions is not infrequently quite out of the usual experience, but if the conditions possess elements of negligence, the person responsible for them may also be held responsible for the result. See, for example, *Herlihy* v. *Little*, 200 Mass. 284; *Turner* v. *Page*, 186 Mass. 600; *Lane* v. *Atlantic Works*, 111 Mass. 136; *Slattery* v. *Lawrence Ice Co.* 190 Mass. 79; *Powell* v. *Deveney*, 3 Cush. 300; *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119, 125; *Derry* v. *Flitner*, 118 Mass. 131; *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15.

The eleventh and twelfth requests * were properly refused, because there was no evidence that the plaintiff's intestate was instructed, or that it was a part of his duty to look at the tank covers before it became his duty to take the temperature of the contents of the tanks, and there was nothing to show that he

---

"5. No duty lies upon a superintendent of many years' experience to warn an employee of a danger which he had never known to arise in all his experience in that business.

"6. There is no evidence that the defendant or its agent ought to have known that the consequences of increasing the heat above 400° would be an explosion."

* "11. If the plaintiff's intestate was in sole charge of the tanks for the night, and if he had been instructed always to keep the covers up, then the plaintiff cannot recover.

"12. If the plaintiff's intestate was in sole charge of the tanks for the night, and if he had been instructed always to keep the covers up, then the plaintiff cannot recover if the explosion would not have occurred if the covers had not been down."

failed to do this earlier than his duty required. It cannot be said that the plaintiff's intestate was negligent, or that he assumed the risk of injury. The jury might have found that he was doing his work, lantern in hand, as he had been instructed to do it. The danger to which he was subjected was one as to which he had no knowledge or experience, or appreciation, according to his declaration shortly after the explosion, which the jury might have believed. The defendant's other prayers were properly refused.

The only other ruling requested by the defendant and refused by the judge was that on all the evidence the plaintiff was not entitled to recover. This could not have been given for reasons already stated.

Although the question is close, we think the case should have been submitted to the jury upon the first count, which alleged the negligence of the superintendent as a ground for recovery for the death under the employers' liability act. The test in this respect is not whether the particular superintendent did or failed to do anything contrary to his own knowledge, but whether he failed to exercise in his employer's business the reasonable care and skill which both the employer and fellow employees were entitled to expect and receive from him as a reasonably prudent and wise superintendent. The standard, which the law establishes in such a case, is whether he exercised the reasonable care and skill that a competent superintendent ought to have exercised under similar circumstances.

As bearing upon the knowledge that the superintendent had, or ought to have had, that fire was likely to occur from the tanks, a witness was permitted to testify that one of those tanks only a few days before the accident had given forth fire. This evidence, although admitted subject to exception, was competent within the discretion of the presiding judge for the purpose of showing that a superintendent in the exercise of reasonable care could have discovered that an explosive compound was generated in the tank. See *Bemis* v. *Temple*, 162 Mass. 342.

On the whole, we are of opinion that it would have been within the bounds of reason for the jury to find that the superintendent should have instructed the plaintiff's intestate as to how he should conduct himself with reference to the use of the

lighted lanterns in reading the temperature of the asphalt, in the event that he found the covers of the tanks down instead of open as they ought to have been, and that this failure to give instructions may have been found to have been negligence.

Nor is there any error in the charge in the respects excepted to by the defendant. The statement of the evidence, to which objection was taken, while it was not in conformity to the contention of the defendant, was supported by some parts of the testimony. It was not given in such context as to impose it upon the jury as a binding statement or as anything more than a mere recitation of the judge's understanding of the evidence. The charge also, in substance, left it open for the jury to find that it was culpable negligence, if the defendant failed to instruct the plaintiff's intestate as to the danger existing when he found the tank covers down and went up to take the readings of the thermometer by the light of his lantern. This was correct as has been pointed out above.

The plaintiff contends that the new trial should be limited to the questions of damages alone. The responsibility of an employer for a superintendent under the employers' liability act in some material respects differs from his common law responsibility for negligence set out in the second count, and therefore her contention in this respect cannot be supported. The result is that the plaintiff is entitled to a new trial upon the first count in her declaration, and to have the verdict in her favor upon the second count stand. *Gorham* v. *Moor*, 197 Mass. 522. *Amherst Bank* v. *Root*, 2 Met. 522, 542. *Sprague* v. *Bailey*, 19 Pick. 436, 442. *Robbins* v. *Townsend*, 20 Pick. 345, 351.

> *Plaintiff's exceptions sustained; defendant's exceptions overruled.*

*J. Gordon*, (*M. L. Fahey* with him,) for the plaintiff.

*E. K. Arnold*, (*W. B. Luther* with him,) for the defendant.