(76 South. 592)

No. 20981.

FLETCHER v. LUDINGTON LUMBER CO.

(June 11, 1917. Rehearing Denied Oct. 29, 1917.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⚖═203(3), 217(3) — ASSUMPTION OF RISK—DANGERS INCIDENT TO EMPLOYMENT—RELIANCE ON PROTECTION BY MASTER.

An employé does not assume, as an incident of the contract of employment, any extraordinary or unnecessary risk that may be imposed upon him by his employer; and, even though the servant might, under ordinary circumstances, know of an existing danger, nevertheless, if he is not likely to remember it or is unable to guard against it while engaged at his work, he has a right to depend upon the superior knowledge and ability of the master or vice principal, if present, to protect him from the danger.

2. MASTER AND SERVANT ⚖═137(1)—MASTER'S LIABILITY—SAFE PLACE TO WORK.

Under the rule that the master must see that the place of employment is kept in a condition of ordinary safety for his servant, and must not subject the servant to an extraordinary or unnecessary danger, it is actionable negligence on the part of the master to stretch a skidder cable, by which logs are being dragged from the woods, close beside and behind a woodsman, who is felling timber, and thereby cut off or diminish his chance of escape from falling timber.

3. MASTER AND SERVANT ⚖═129(1) — NEGLIGENCE—PROBABLE CAUSE—LIABILITY.

The unfortunate consequences of negligence are almost invariably surprises. It matters not how slight is the chance of mischief from a particular act of negligence, or how often a man may be negligent in a particular manner without causing harm to others, if injury does result as a natural consequence of the negligence, the person to whose fault or negligence the injury is imputable is liable in damages.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Winston Overton, Judge.

Action by Mary C. Fletcher, individually and as tutrix of minor children, against the Ludington Lumber Company. Judgment for defendant, and plaintiff appeals. Judgment annulled, and adjudged that plaintiff recover $10,000; $5,000 for herself, and $5,000 as tutrix.

Cline & Bell, of Lake Charles, for appellant. Pujo & Williamson, of Lake Charles, for appellee.

O'NIELL, J. The plaintiff appeals from a judgment rejecting her demand for damages for the death of her husband, W. A. Fletcher, father of her four minor children. The suit is for $12,500 for the use and benefit of the children, and for the same amount for the widow. The plaintiff also claimed $467.22 for certain insurance money that was collected by the defendant on the life of Fletcher; and it was paid to her after this suit was filed.

The plaintiff's husband was killed by a limb falling upon him from a tree that he was cutting down, while employed at felling timber for the defendant company. The complaint is that the defendant rendered the place of employment unnecessarily dangerous to the employé, by running the skidder cable beside and behind him, in close proximity to the tree he was sawing down, and thereby obstructing his way of escape from falling timber.

The tree which Fletcher and a man named Cole were sawing down, and from which the limb fell upon Fletcher, was about 240 feet from the skidder, in a direction due north

from the steam drum or spool on which the steel cable was wound. The cable was run out into the woods in a direction slightly west of north, passing only 12 feet to the west of the tree that Fletcher and Cole were sawing down, to a standing tree 20 feet away, and in a direction north-northwest, from the tree that Fletcher and Cole were working on. The cable was passed around the west and northwest side of the tree 20 feet away from Fletcher and Cole, and ran out thence in a direction northeast, an additional distance of 80 or perhaps 100 feet into the woods, where it was attached, by means of log tongs, to a tree that had been felled and was to be pulled to the skidder. Of the two men, Fletcher and Cole, the former was in authority. Having determined that the tree which they were to fell should fall towards the east, Fletcher hacked or "bedded" the tree on that side, and they began sawing down the tree. Fletcher, at one end of the log saw, was on the north or northwest side of the tree, and Cole, at the other end of the saw, was on the south or southeast side of the tree. Other men, in couples, were likewise felling timber all around them. The foreman in charge of all the men engaged in felling the timber stood beside the tree that Fletcher and Cole were sawing down, only 4 or 5 feet from Fletcher.

It appears that the driving of a wedge into the saw cut, to let the saw run free and easy, loosened a large limb near the top of the tree, about 60 feet from the ground; and, when the men resumed sawing, the limb began to fall. Several wood cutters nearby heard and saw the falling limb and gave the alarm for Fletcher and Cole and the foreman to get out of the way. Each of the three men ran directly away from the tree, the foreman going in a northeasterly direction, Cole in a southeasterly direction, and Fletcher in a northwesterly direction. It so happened that, at that moment, the log to which the cable was attached was being pulled towards the skidder, "about as fast as a horse could trot," as the witnesses estimated the speed. Fletcher, running from the tree from which the limb was falling, met the incoming log, about 15 feet from the tree. He stopped suddenly to avoid a collision with the approaching log, turned to the left and then to the right, as if bewildered, and was struck down and killed by the falling limb. In the meantime, the foreman had run a distance of 40 feet from the tree from which the limb had fallen, had stopped, turned around, and saw Fletcher's predicament before the limb struck him. Cole, without stopping or looking back to see what might befall the other men, ran a distance of 75 feet from the tree before the falling limb struck Fletcher. The man who controlled the steam drum, at the skidder, could not hear the alarm because of the noise of the machinery; but he saw the falling limb and the men running from the tree, and he released the friction and stopped the cable so quickly that less than half of the length of the incoming log (36 feet long) passed the point where Fletcher fell. All of the men who witnessed the accident agreed that Fletcher suddenly stopped running, at a point about 15 feet from the tree he had been sawing, and about 3 feet in front of the approaching log. They testified that, when he stopped running, he stooped and held his hands above his head, as if, instinctively, to protect himself from the falling limb. He was struck on the head and shoulder and knocked forward; his face being buried in the ground close beside the log that he had encountered. The skidder operator had stopped the incoming log the instant that Fletcher was struck down.

There is no reasonable doubt that the foreman and Fletcher and Cole all ran from the tree from which the limb was falling the instant the alarm was given. It is also certain, from the fact that Cole ran 75 feet and that

the foreman ran 40 feet, and then had time to stop and turn around before the falling limb struck Fletcher, that Fletcher, too, would have run far enough to have avoided the falling limb, if he had not encountered the incoming log in front of him and the running cable to the left of him.

It is argued by the learned counsel for the defendant that the accident would have been avoided, if Fletcher had chosen any other direction when he ran from the tree. That is true; but it takes time to think, and to govern one's self thoughtfully; and Fletcher had no time to think or decide which way to run. The second or few seconds he lost by encountering the incoming log and the running cable meant eternity for him.

It is argued by the learned counsel for the defendant that, although Fletcher was not at fault for taking the only dangerous route in attempting to escape from the imminent danger, the danger from which he was running was not caused by any fault of the defendant. That is true. The danger from which Fletcher ran—the falling of the limb—was not caused by the defendant; but the danger into which Fletcher ran—the approaching log and the running cable—was caused by the defendant.

[1] Fletcher was an experienced woodsman and had knowledge of the ordinary dangers of the occupation. He knew, or ought to have known, that the cable was stretched out beside and behind him, close to the tree he was sawing down. Hence it is argued by the learned counsel for the defendant that Fletcher knew, or ought to have known, that the cable might be pulling in a log at any moment. That is true; but it cannot reasonably be contended that Fletcher was bound to remember, in an instant of excitement and danger, that the cable might be pulling a log directly towards him at that moment. He had a right to rely upon the better knowledge of his superior, the foreman, who was

standing close by, with full authority over all the men working in the woods, and with nothing to do but to observe what was going on or likely to happen. Fletcher, on the other hand, had his mind on the work he was doing, sawing the tree, and had his back turned towards the approaching log.

[3] It is no defense or excuse that the coincidence, that the skidder cable happened to be pulling a log directly towards Fletcher at the very moment when he had to turn and run away from the tree, was an extraordinary coincidence, not likely to happen. The unfortunate consequences of negligence are almost invariably surprises. It matters not how slight is the chance of mischief from a particular act of negligence, or how often a man may be negligent in a particular manner without causing harm to others, if injury does result as a natural consequence of the negligence, the person to whose fault or negligence the injury is imputable is liable in damages. See Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475, quoting Wharton's Law of Negligence (2d Ed.) § 77. See, also, Atkins v. Bush, 141 La. 180, 74 South. 899, and Dulligan v. Asphalt Co., 201 Mass. 227, 87 N. E. 567. The combination of circumstances, that the skidder cable was pulling a log towards the tree on which Fletcher was working at the particular moment when Fletcher had to make a hasty retreat, was not, however, a very extraordinary coincidence. It was very near time for the tree itself to fall when the limb fell. In fact, the tree did fall a few minutes afterward, without anything more having been done to it. In our opinion, it was gross negligence on the part of the foreman of the defendant company to permit the running of the skidder cable so close beside and behind Fletcher, pulling a log towards him from the rear, under the circumstances.

[2] The learned counsel for the defendant contend that the danger of being injured or

killed by a falling limb was an obvious and ordinary danger, of which Fletcher assumed the risk as an incident of the employment. The doctrine that an employé assumes the risks of the employment that are known to him or obvious to a person of ordinary intelligence has little or no application to this case. The rule most applicable is that the employer must see that the place of employment is kept in a condition of ordinary safety for his employés, and must not subject them to extraordinary or unnecessary dangers. The servant does not assume, as an incident of the contract of employment, any extraordinary or unnecessary risk that may be imposed upon him by his master. And even though the servant might, under ordinary circumstances, know of an existing danger, nevertheless, if he is unable to guard against it while engaged at his work, he has a right to depend upon the superior knowledge and ability of the master or vice principal, if present, to protect him from the danger.

Our conclusion is that the defendant was at fault in rendering the place of the employment unnecessarily dangerous to the employé; that the foreman of the defendant company, who was present at the time and place of the accident, was guilty of negligence in permitting the skidder cable to be drawing a log towards Fletcher at a time when the foreman knew or ought to have known that Fletcher might have to retreat in great haste. The death of Fletcher was the result of the negligence and fault of the defendant company in that respect.

The plaintiff's husband was between 32 and 33 years of age at the time of his death. His average wages amounted to $3 a day; and his life expectancy was nearly 34 years. The eldest of his four children was not quite 10 years of age when her father was killed. Under these circumstances, we have concluded to fix the amount of the judgment at $10,000; that is, $5,000 for the use and benefit of the four children and $5,000 for the widow.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff recover of and from the defendant $10,000; that is, $5,000 for herself and $5,000 for the use and benefit of her four children. The defendant is to pay all costs of this suit.

SOMMERVILLE, J., takes no part.