JOHN W. BURNHAM *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 29, 1917. — June 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence,* Railroad, In use of steam, Proximate cause.

At the trial of an action against a railroad corporation for personal injuries received in 1910, there was evidence tending to show that at nearly midnight the plaintiff was waiting upon a station platform for a train for which he had purchased a ticket, that, as the train approached and was two or three hundred feet away, he walked along the platform two or three feet from the edge and in the direction in which the train was going, the track being on his right hand side, and then turned around and faced the train as the engine was about to go by him, that the train was going "very slowly" — "perhaps a little faster" than "a man could walk," that, when the rear platform of a car that the plaintiff intended to board came opposite to him, "a sudden gust of steam" came from between the car platforms and completely enveloped and blinded, dazed and startled him, that he instinctively fell back, fell down and somehow in some unknown way rolled underneath the train and his right foot was run over by the forward truck of the car next after the one that he had intended to board. *Held,* that the question, whether the plaintiff was in the exercise of due care, was for the jury.

At the same trial there also was evidence, tending to show that the accident was at the station in Wakefield in November, that the only way that the steam could get out between the cars was between loose couplings in a hose that carried steam for heating purposes from car to car, that it was the duty of employees of the defendant in Boston to inspect the couplings before the train left the station there, and "that if the couplings had been properly inspected in Boston

there would be no leak, but that sometimes they are not hammered down as hard as they are at others and there is apt to be a leak; *that whether or not there is a leak depends upon how thoroughly the inspectors have done their work."* *Held*, that the questions, whether the escape of steam was caused by negligence of employees of the defendant and whether the defendant had exercised the degree of care required of it as a carrier of passengers for the safety and protection of the plaintiff as a passenger, was for the jury.

On the evidence above described it further was *held*, that the jury were warranted in finding that the fall and landing of the plaintiff's body upon the track were the result of a force carrying the body downward and toward the track when the plaintiff lost his equilibrium due to the escaping steam.

It is a matter of common knowledge that the material effect of a sudden and unexpected gust of steam striking a person would be, at least momentarily, to disturb and startle that person to a movement of avoidance of danger and to self protection.

Since the jury would have been warranted in finding that the employees of the defendant in the above described action, if they had exercised ordinary prudence, could have foreseen that steam probably would escape from leaks in couplings of the steam hose improperly connected between the cars, and that they would have anticipated that the probable consequences of such escape of steam would be an injury of some kind and degree to some person whom it should strike or envelop, a further finding by them, that negligence of the defendant's employees was the proximate cause of the plaintiff's injuries, was warranted.

TORT for personal injuries received on November 12, 1910, while the plaintiff was upon the platform of the defendant's station at Wakefield under the circumstances described in the opinion. Writ dated December 13, 1910.

In the Superior Court the action was tried before *Pratt*, J. The material evidence is described in the opinion. At the close of the evidence the defendant asked for the following rulings:

"1. There is not sufficient evidence to justify a verdict for the plaintiff.

"2. The jury are not justified in finding negligence on the part of the defendant or of its agents or servants if they find that the only steam near the train was the steam which came from the engine.

"3. The jury are not justified in finding that the plaintiff was in the exercise of due care.

"4. If the jury find that the plaintiff was confused by steam coming from between the cars while he was attempting to board a moving train, the plaintiff cannot recover."

The judge gave the second and the fourth rulings and refused to give the first and the third.

The defendant requested the judge to order a verdict for the

defendant, but the judge submitted the case to the jury upon the following stipulation, which was agreed to by the counsel for both parties: "If the jury find a verdict for the defendant, the verdict is to stand. If the jury find a verdict for the plaintiff, the verdict is to be set aside and the case reported to the Supreme Court with the stipulation that if the ruling of the court ordering a verdict for the defendant is correct, there shall be judgment for the defendant. If ruling or ordering a verdict by the court for the defendant was incorrect, then judgment is to be entered for the plaintiff in the sum found by the jury."

The jury found for the plaintiff in the sum of $3,000, which verdict the judge immediately set aside in accordance with the terms of the stipulation and by his order the jury returned a verdict for the defendant. After the death of *Pratt*, J., the case was reported according to the terms of the stipulation by *Hardy*, J.

*C. J. Muldoon, Jr.*, for the plaintiff.

*L. T. Trull & J. M. O'Donoghue*, for the defendant.

PIERCE, J. The evidence was conflicting but warranted the jury in finding that the plaintiff, who resided in Reading, had come to the Wakefield station to take a north bound train leaving Wakefield for Reading about 11:30 o'clock P. M.; that he arrived at the station about five minutes before the train time and purchased a ticket from the station agent; that when the train approached from the south and was two or three hundred feet away, the plaintiff walked some fifteen feet north along the platform and within two or three feet of its edge, the tracks being on his right hand side; that he then turned around and faced the train just as the engine was about to go by him; that the train was coming to a stop going "very slowly" — "perhaps a little faster" than "a man could walk;" that the plaintiff intended to board the rear platform of the smoking car; that that car was either the first or second car of the train; that when the step of the rear platform of the smoking car was about opposite where the plaintiff was standing "a sudden gust of steam" came out from between the car platforms and so completely enveloped the plaintiff that a witness who stood on the platform of the car could not see him; that the cloud and gust of steam blinded, dazed and startled the plaintiff; that he instinctively started back, fell down, and somehow in some unknown way rolled underneath the train and his

right foot was run over by the forward truck of the car next after the smoking car.

There was evidence that the cars on the train were heated by steam that came from the engine through a pipe running under the cars and connected by a hose between the cars. These hose are connected by couplings not inspected by the trainmen but by inspectors when trains are coupled up at the North Station in Boston. A witness called by the defendant testified on cross-examination that "the only way that steam could get out between the cars was between loose couplings;" another witness called by the defendant testified on cross-examination "that steam comes from the couplings between cars when there is a leak or when the hose goes up; that sometimes when a train is standing in the North Station, Boston, ready to go out there would be a leak; that until the steam goes through it cannot be told how tight the couplings are and after the steam goes through the inspector fixes the hose; that sometimes at the North Station so much steam escapes that one cannot see the steps; that this happened quite often, not so much since the new couplings were used as it did under the old couplings; that the witness had seen steam come out of the couplings when stopping at stations on the road. On redirect the witness said that steam would continue to escape from such a leak as was referred to until the leak was hammered down or until the hose was righted."

Another witness called by the defendant testified on cross-examination "that the witness had on other occasions seen steam coming from between cars; that if the couplings had been properly inspected in Boston there would be no leak but that sometimes they are not hammered down as hard as they are at others and there is apt to be a leak; that whether or not there is a leak depends upon how thoroughly the inspectors have done their work; that it would very seldom happen that when a train was stopping there would be a leak when there was not one before."

Upon the foregoing facts it is plain that the jury could find that the plaintiff was in the exercise of due care and that there would have been no leak in the couplings of the steam hose, and consequently no accident to the plaintiff attributable to the escape of the steam therefrom, if there had been proper inspection in Boston. It follows that the question whether the defendant, a

carrier, had exercised the degree of care required by law for the safety and protection of the plaintiff, a passenger, was a question of fact for the jury.

The defendant raises no issue of due care but contends that the contention of the plaintiff that he fell backward and then rolled under the car somehow, while the train was moving, from a point between the two cars to the forward wheels of the forward truck of the second car, is impossible of performance and is contrary to all physical laws and to all human experience. If it were indisputably true that the plaintiff was thrown backward to the ground, — thrown by the direct impact of escaping steam, or that he fell backward to the ground as the result of his own voluntary or involuntary action, it would be highly improbable if not impossible that the momentum that caused the body to fall away from the train could become reversed and move the body toward the train within the time covered by the fall and the passing of the wheels over the foot of the plaintiff. But the jury making some allowance for the manifestly somewhat imperfect recollection of the plaintiff, could find that the fall and the landing of the body upon the track were the result of a continuous, positive and possible force carrying the body downward and toward the track. The evidence does not show that the accident could not by any possibility have happened substantially as described by the plaintiff. It follows that the plaintiff had the right to have this issue determined by the jury. *Blumenthal* v. *Boston & Maine Railroad,* 97 Maine, 255, 261.

Finally, the defendant contends that, "the act of the defendant, in allowing the steam to escape, . . . was not the proximate cause of the plaintiff's injuries." Upon this issue the jury could find as a matter of common knowledge that the natural effect of a sudden and unexpected gust of steam striking a person would be, at least momentarily, to disturb and startle that person to a movement of avoidance of danger and to self-protection. It is evident that a man of ordinary prudence could have foreseen that steam would probably escape from leaks in couplings of steam hose improperly inspected, and would have anticipated that the probable consequence of such escape would be an injury of some kind and degree to some person whom it should strike or envelop. This is sufficient. *Hill* v. *Winsor,* 118 Mass. 251. *Dulligan* v. *Barber Asphalt*

*Paving Co.* 201 Mass. 227, 231. *Ogden* v. *Aspinwall*, 220 Mass. 100.

In the opinion of a majority of the court a verdict should not have been ordered for the defendant. In accordance with the terms of the report "judgment is to be entered for the plaintiff in the sum found by the jury.

*So ordered.*