LILLIAN B. OGDEN vs. WILLIAM H. ASPINWALL & others,
trustees.

Suffolk.   November 17, 18, 1914. — January 7, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Practice, Civil,* Exceptions, Setting aside verdict. *Negligence,* Probable conse-
quences, In operation of elevator. *Elevator. Landlord and Tenant.
Damages,* Excessive. *Words,* "Objected," "Commensurate."

Statements in a bill of exceptions that the excepting party "objected" to the re-
fusal of the presiding judge to make certain rulings and that such party "ob-
jected" to certain portions of the judge's charge, do not state exceptions; but,
in the present case in which this point was not taken by the adverse party, this
court assumed for the purposes of decision that the objections were before
them as exceptions, and as exceptions they were overruled.

In this Commonwealth it long has been settled law that in an action of tort for
personal injuries it is not necessary, in order to hold the defendant liable, for
the plaintiff to prove that the particular series of events that resulted in the
plaintiff's injuries were the probable consequences of the defendant's negligence;
it is enough for the plaintiff to show that the probable consequence of the de-
fendant's conduct was that harm of the same general character as that which
came to the plaintiff would come to persons who stood in the same general
relation to the defendant that the plaintiff did.

In an action against the owner of a building, who maintained and operated therein
an elevator used for the transportation of both freight and passengers, brought
by a person having the rights of a tenant in the building,·for personal injuries
from the elevator suddenly starting downward as the plaintiff was stepping out
of it at a floor where it had stopped, there was evidence on which it could have
been found that the metal grill work, which made the front of the car when it
was used for passengers, was removable, and was taken out when the car was
used for freight, that the bolts by which this grill work was fastened to the car
had become defective and that during the six weeks preceding the accident the
existence of a defect in the grill work twice had been reported to the defendant
but that nothing had been done in consequence of those reports, that at the
time of the accident the elevator boy was pushing open the sliding door which
formed a part of the grill work, when the whole grill work fell in on the boy,
causing him involuntarily to pull the lever toward him and start the elevator
downward, whereby the plaintiff was injured. *Held,* that there was evidence
of the defendant's negligence on which the plaintiff was entitled to go to the
jury.

In an action of tort for personal injuries caused by the sudden starting downward
of an elevator as the plaintiff was stepping out of it on a floor of the defendant's
building, there is no·error in an instruction of the presiding judge to the jury,
in relation to the defendant's duty in the maintenance and operation of the
elevator, that "due care to be exercised by anybody must be commensurate

care. It must be the care which is equal and proportionate to the probable harmful consequences that may follow from the lack of its exercise;" the meaning of the word "commensurate" being explained by the other words of the passage quoted and its use in this sense being in accordance with its approval and use in previous decisions of this court.

On an exception to the refusal of a judge, who presided at the trial of an action of tort for personal injuries, to set aside a verdict for the plaintiff on the ground that the damages were excessive, the question for this court is whether the judge in denying the motion abused his discretion, and to sustain the exception it is necessary to decide that the judge could not have taken honestly the view taken by him.

LORING, J. The facts out of which this action arose were, or could have been found by the jury to have been, in substance as follows: The plaintiff was an employee of a tenant of the defendants and as such had a right to use the elevator which the defendants had provided for the use of their tenants. As she was in the act of stepping out of it, the car suddenly, without warning, went from under her. She tried to step back into the car but was caught, as it went down, between the top of the car and the floor of the building.

The elevator was used for both freight and passengers. When used for freight, the metal grill work which made the front of the car was taken out. When used for passengers, part of this grill work was stationary and the rest made the door of the elevator. That part of the grill work which made the door was on the left of the car when facing outward. The elevator was operated by a lever also on the left hand side of the car. The elevator boy held the lever in his left hand and used his right hand to open and shut the door, which slid back and forward just outside the stationary part of the grill work. To send the car up, the lever was moved forward toward the front of the car; to send the car down, it was moved back in the opposite direction. When the lever was in the centre the car was stationary. Attached to the lever was a clutch in which there was a spring called a dog and grip.

The stationary part of the grill work was attached to the elevator car at the top by "two stationary pins which fitted into holes in the frame of the elevator." At the bottom it was intended to be bolted to the car, but (on the evidence) in place of bolts "old rusty spikes, wire spikes, . . . badly bent" had been used. For about six weeks before the accident the condition was described by the elevator boy as follows: "The holes in the floor

must have been three-quarters of an inch, the way they were worn, and as they cleaned the car every morning, the dirt seemed to all gather up in under that loose frame, under that loose piece of grating, and those holes were more or less full of dirt, and the bolt didn't seem to have the grip that it ought to have on the floor, on account of the dirt underneath." The result was that the door had become loose and "seemed to wabble." During the six weeks next before the accident the car twice had been reported as out of order, but nothing had been done by the defendants in consequence of these reports.

At the time of the accident here in question, the elevator boy threw back the door with his right hand when the car reached the street floor. But the door did not go back into its place by some six inches. To get the elevator door entirely open the boy pushed it back harder with his right hand, having the end of the lever in his left hand. Thereupon the whole grill work (including the stationary part and the sliding door) fell in on top of the boy, causing him involuntarily to pull the lever toward him. In consequence the car went down, and the plaintiff was caught as stated above. As soon as the elevator boy recovered from his surprise he reversed the lever, the car went up, and the plaintiff was released.

At the trial the defendants asked for five rulings, set forth in the note: *

It is stated in the bill of exceptions that the defendants "ob-

---

* "1. Upon all the evidence in the case the plaintiff cannot recover.

"2. The starting of the car under the circumstances of this case is not an act for which the defendants were responsible.

"3. The starting of the car and the injury to the plaintiff which resulted therefrom were not consequences which according to the usual experience of mankind were probable or likely to occur from allowing the movable frame to be in the condition that it was at the time of the accident.

"4. Even if it is found that the defendants were negligent in allowing the movable frame to be in the condition that it was at the time of the accident, and that in consequence thereof the frame fell upon the elevator operator causing him to push the lever and start the car, thereby causing the plaintiff's injuries, the plaintiff cannot recover.

"5. The act of the elevator boy in releasing the clutch and throwing the lever over was not an act which could reasonably be anticipated as the result of the falling of the movable frame, and the defendants are not liable."

jected" to the refusal of the presiding judge to give the rulings asked for, and that they "objected" to portions of the charge given by the presiding judge. An objection is not an exception, and this part of the bill of exceptions might be passed over for that reason. But the point has not been taken by the plaintiff. There is nothing in these "objections," and we prefer to put our decision on that ground.

The defendants have argued that on the statement (contained in the bill of exceptions) of the way in which the stationary part of the grill work was attached to the top of the car, the grill work must have fallen outward and could not have fallen inward on top of the elevator boy. In view of the fact that several witnesses testified directly to the fact that the grill work (including the stationary part and the door) did fall in on top of the elevator boy, and that one of the witnesses had to hold it up to enable the elevator boy to work the lever, it is idle to make this contention.

The main contention made by the defendants underlies the second and third rulings asked for by them and is in terms expressed in the fifth. It is that to hold the defendants liable the plaintiff must prove that the particular series of events which ended in the injury done the plaintiff were the probable consequences of the defendants' acts. But it has been settled for more than forty years that that is not the law of the Commonwealth. *Higgins* v. *Dewey,* 107 Mass. 494. *Hill* v. *Winsor,* 118 Mass. 251. *Hollidge* v. *Duncan,* 199 Mass. 121. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227; and in this connection see *McNicholas* v. *New England Telephone & Telegraph Co.* 196 Mass. 138, 141; *Delaney* v. *Framingham Gas, Fuel & Power Co.* 202 Mass. 359. It was settled by the case of *Higgins* v. *Dewey, ubi supra,* and the other cases just cited, that to make out liability on the part of a defendant it is enough to prove that the probable consequence of his acts was that harm of the same general character as that which came to the plaintiff would come to persons who stood in the same general relation to the defendant as the plaintiff; and that it is not necessary to make out liability on a defendant's part that the particular series of events which ended in the injury to the plaintiff were the probable consequences of the defendant's acts. For a discussion of the question and a collection

of cases outside the Commonwealth see Professor Smith in 25 Harv. Law Rev. 238 *et seq.*

In the case at bar the jury were warranted in finding that the action of the elevator boy in squeezing the clutch and pulling the lever toward him, thereby causing the car to descend, was an involuntary action on his part caused by the front of the car falling in on him. If so, there was in this case no intermediate act of a third person who was found, or might have been found, to have been the cause or one of the causes of the accident, as was the case in *Gibson* v. *International Trust Co.* 177 Mass. 100; *S. C.* 186 Mass. 454; and in the cases of *Lane* v. *Atlantic Works,* 111 Mass. 136, and *Horan* v. *Watertown,* 217 Mass. 185.

In addition to the "objections" taken to the refusal to give the rulings asked for, the defendants objected to the charge given by the presiding judge in the particulars stated in the note.*

It might be held that the objections to the charge were too indefinite to be the ground of an exception. But we pass by that. There is nothing in the "objection."

In his charge to the jury the presiding judge said: "Now due care to be exercised by anybody must be commensurate care.

---

* "I want to object to a good many different parts of your charge; namely "Where your honor says the due care must be commensurate care, etc.

"That it is not necessary that the defendant need know just what accident would happen, but he must have in mind the probable harmful consequences, and when probable harmful consequences may come, his care must be commensurate with the probable consequences. I object to so much of the charge as relates to that.

"Whether there was any danger that was liable to happen. Was it liable to result in injury to persons in the elevator? I object to so much of your honor's charge as says that.

"How would it affect the lever? How would it affect the operator? It might fall on the lever and start, or it might fall on his arm and cause it to start. I object to that.

"If he didn't have hold of it he would naturally grab for it; whatever your honor said on that point.

"That the defendants ought to have had in mind what things were liable to happen if the condition of the movable frame was calculated to cause harmful consequences; that the defendant would be liable.

"If harmful consequences were liable to happen from it, although the particular consequences, etc., that he would still be liable if the consequences were liable to happen."

It must be the care which is equal and proportionate to the probable harmful consequences that may follow from the lack of its exercise." If the word "commensurate" had been objectionable, the rest of the proposition is undoubtedly correct. See for example *Cayzer* v. *Taylor*, 10 Gray, 274; *Gardner* v. *Boston Elevated Railway*, 204 Mass. 213; *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495. And the meaning which the word "commensurate" had in this sentence was explained by the rest of the proposition laid down by the presiding judge. But the word "commensurate" has been approved by this court when used as it was used by the presiding judge. *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, 215. Indeed it has been used by this court in stating the proposition which the presiding judge was stating. *Pomeroy* v. *Boston & Northern Street Railway*, 193 Mass. 507, 510. *Marshall* v. *Boston & Worcester Street Railway*, 195 Mass. 284, 287.

In the other portions of the charge objected to the presiding judge was stating and developing the proposition of law established by *Higgins* v. *Dewey, ubi supra*, and the other cases cited above. What was there said was both correct and accurate.

The exception taken to the admission of evidence has not been argued, and we treat it as waived.

The exception taken to the refusal of the judge to set aside the verdict on the ground that the damages were excessive,* must be overruled. The question presented by this exception is not whether we should have exercised our discretion in the way in which the judge exercised his discretion. It is whether the judge abused his discretion. See *Edwards* v. *Willey*, 218 Mass. 363, 365. To sustain the exception it is necessary that we should decide that the judge could not honestly have taken the view taken by him. It is impossible to say that, and the result is that this exception must be overruled.

*Exceptions overruled.*

J. *Lowell*, (J. A. *Lowell* with him,) for the defendants.
R. *Spring*, for the plaintiff.

---

* The verdict was for the plaintiff in the sum of $15,000.