PERCIVAL B. WATERS *vs.* CHARLES E. COTTING & another, trustees.

Suffolk.    December 6, 1916. — June 25, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Of one controlling real estate, In maintaining elevator.    *Elevator.*

In an action for personal injuries sustained by reason of the falling of an elevator in a business building of the defendant, where it appears that the operation of the elevator was under the defendant's exclusive management, that the plaintiff, having transacted business with a tenant of the defendant on the eleventh floor of the building, took the elevator to descend, that the elevator stopped at the tenth floor and, when started again, immediately dropped to the third floor and there stopped with a loud crash and tilted to one side, injuring the plaintiff, and where there is evidence that the accident happened because the safety device of the elevator caught only on one side and also because a gate valve in a discharge pipe, which could have been regulated so as to prevent the accident, was adjusted improperly, the question of the defendant's negligence is one of fact for the jury.

TORT for personal injuries sustained on July 9, 1915, by reason of the sudden falling of an elevator in the defendants' building numbered 101 on Tremont Street in Boston and called the Paddock Building, when the plaintiff was being transported in the elevator.    Writ dated July 15, 1915.

In the Superior Court the case was tried before *Stevens,* J. At the close of the evidence, which is described in the opinion, the defendants asked the judge to order a verdict in their favor.    The

judge refused to do this and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $8,500. The defendants alleged exceptions.

*E. C. Stone,* for the defendants.

*R. Spring,* (*M. T. Hazen* with him,) for the plaintiff.

CARROLL, J. The William W. Babcock Company was a tenant at will of the defendants, on the eleventh floor of an office building. The plaintiff, after transacting some business with the Babcock Company, left the office and entered a passenger elevator operated by the defendants. The elevator descended to the tenth floor, where a number of passengers entered; when started, it instantly dropped to a point near the third floor, stopped with a loud crash and tilted, so that one side was very much higher than the other. Several of the passengers were injured, including the plaintiff.

At the close of the evidence the defendants requested the judge to direct a verdict in their favor. This request was refused and the defendants excepted.

The plaintiff testified the operator grasped the lever and "slammed it over" in such a manner that his hands left the lever before it "arrived at its destination." Sufficient force was given it so that "it would arrive there" without his assistance, and then the car dropped with terrific speed; "that he had travelled in that elevator before, and that the elevators there were the fastest in the city of Boston;" that the time which elapsed after the elevator left the tenth floor and before it stopped, seemed to him to be about four seconds. "It was a very brief time." There was testimony that the car descended like a flash. A witness who had been carried on this elevator before testified "The speed at which it came down was much faster than it had come at other times. He always knew they went fast and had a dread of them, but he knew at the time it came down it was falling, it went at such a terrific speed." He was conscious of a sudden drop, "and it seemed as if everything gave way under the car." There was other evidence tending to show that the car was started suddenly and moved with unusual and excessive speed.

It could have been found that the safety devices designed to catch simultaneously the rails on both sides, caught only on one side; that the safety shoe on this device was worn and its condi-

tion was discoverable by proper inspection.   There was expert evidence that the accident happened because the safety device caught only on one side.   There was also evidence that in the discharge pipe there was a gate valve, which could be so regulated as to render it impossible for the car to descend at undue speed, even if fully loaded and the operator "opens his valve as wide as he can," and if the gate valve had been properly adjusted, it would not have been possible for the accident to have happened in the way it did.

The defendants operated the elevator.   It was in their exclusive management.   On this evidence the defendants' negligence was plainly a question of fact for the jury and the judge could not direct a verdict in their favor.   *Ogden* v. *Aspinwall*, 220 Mass. 100. *Griffin* v. *Manice*, 166 N. Y. 188.

The plaintiff was upon the premises on a matter of business with the Babcock Company and had at least the rights of the tenant. *Domenicis* v. *Fleisher*, 195 Mass. 281.   There is nothing in *Baum* v. *Ahlborn*, 210 Mass. 336, *Follins* v. *Dill*, 221 Mass. 93, *Mikkanen* v. *Safety Fund National Bank*, 222 Mass. 150, in conflict with what is here stated.

As there was evidence of the defendants' negligence for the consideration of the jury, there was no error of law in refusing the defendants' request.

*Exceptions overruled.*