LILLIAN A. DRAPER *vs.* CHARLES E. COTTING & another, trustees.

JOHN J. CALLAHAN *vs.* SAME.

CHARLES E. CALLAHAN *vs.* SAME.

PATRICK J. HARTNETT *vs.* SAME.

EDWARD DRAPER *vs.* SAME.

Suffolk.    December 7, 1917. — September 11, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Of one controlling real estate, In maintaining elevator, Safety device, *Res ipsa loquitur. Elevator. Landlord and Tenant. Practice, Civil,* Judge's charge.

In an action against the owner of an office building for personal injuries sustained when in a passenger elevator in the building maintained and controlled by the defendant, there was evidence that the plaintiff, having completed certain business with a tenant on the tenth floor of the building, entered the elevator on that floor to descend to the street, that the operator started the car, which thereupon shot downward with "great violence," inclining to one side and stopping at a point near the third floor, where it substantially was

wrecked, that the elevator had been in use for twelve years or more and that it never had been inspected to ascertain whether the instantaneous safety device, with which it was equipped and which was designed to act with equal restraining power simultaneously upon rails on each side of the elevator well, remained in an effective working condition to ensure the safety of passengers, and that whether the safety device was in proper working order could be ascertained only by an examination of the entire apparatus. There also was evidence on which it could have been found that the elevator would not have fallen in the way that it did unless its appliances had been "out of order in respects which could have been discovered by reasonably careful inspection." *Held,* that the plaintiff was entitled to go to the jury.

In the case above described it also was *held* that evidence properly was admitted on which it could have been found that the safety device was an obsolete and improper appliance, because an improved safety device had been in common use for a considerable period before the accident, by the adoption of which the accident would have been avoided.

In the same case it was *held* that the defendant, while not required to use any particular appliance, was bound to exert every reasonable effort to secure safety.

In the same case there was evidence warranting a finding that a defect in the type of safety device attached to the elevator could "only be discovered by a careful inspection of the mechanism at the top of the elevator well and on the bottom of this car made by a person familiar with the construction and operation of elevators." *Held,* that, if it were found that the device was defective, it also could be found that the defect was a hidden one as defined in *Andrews* v. *Williamson,* 193 Mass. 92, for which the defendant would be responsible.

In the same case it was *held* that an instruction rightly was given to the jury to the effect that the defendant was bound to use ordinary care to ascertain whether the safety device was reasonably safe for the purposes for which it was designed and intended and thereafter to see that it was maintained in a reasonably safe condition.

In the same case it was *held* that an instruction rightly was given to the jury to the effect that, if the elevator was apparently safe when the tenant, with whom the plaintiff had been transacting business, began its occupancy, it was the duty of the defendant as landlord to use reasonable care to keep it safe, and, if the elevator was in fact unsafe at the time when it was apparently safe, it was the defendant's duty as landlord during the occupancy of the tenant to put the elevator in a safe condition and to use reasonable care to keep it so.

In the same case the defendant introduced in evidence a portion of the regulations of the board of elevator regulations relating to the installation of speed governors connected with safety devices of power elevators and showed that the defendant had installed such speed governors, and it was *held,* that the jury rightly were instructed that the question was not, whether the defendant had complied with these regulations, but, whether the device used, when properly connected with the speed governor, was reasonably safe.

In the same case it was *pointed out* that, whether the defendant had used due care in his relation to the plaintiff, was a question of fact on all, and not on a portion, of the evidence.

In the case above described the presiding judge refused to rule that the doctrine of *res ipsa loquitur* had no application to the case, and instructed the jury as follows: "If, according to your experience, you find that an accident or an event such as this does not ordinarily happen except through negligence on the

part of the persons having control of the elevators, and who have charge of them, then you may infer from the happening of the accident itself that it was caused by the negligence of the persons having control of the elevators, even although you are unable to point out and specify in what particulars that negligence exists." *Held,* that both the refusal of the ruling requested and the instruction given were right.

In the same case it was *said,* "The jury well could find that, while it [the elevator] was being used in the customary manner, its collapse and partial demolition occurred, and this fact of itself until explained was sufficient for the application of the doctrine" of *res ipsa loquitur.*

In the same case it was *said,* "The accuracy of the charge as an exposition of the law applicable to the essential issues of fact is to be determined from all the judge said, and not from detached portions of the charge."

In the same case it was *held* that the jury rightly were instructed as follows: "Merely because the instantaneous device operated and operated in the way in which it was intended to operate and thus prevented more serious injury from happening than did happen, in this particular case, it would not absolve the defendants from blame if they were negligent in causing the safety device to come into operation."

A presiding judge may use illustrations for the purpose of more pointedly directing the attention of the jury to the questions they are to decide. This is a matter of discretion, not to be reviewed unless prejudicial error positively is shown, and none was held to have been shown in the present case.

FIVE ACTIONS OF TORT against the owners, as trustees, of an office building numbered 101 on Tremont Street in Boston called the Paddock Building, the first four actions being for personal injuries sustained by the respective plaintiffs on July 9, 1915, while in a passenger elevator in the building, and the fifth being by the husband of the plaintiff in the first case for expenses incurred on account of the injuries sustained by his wife. Writs dated June 8, 1916, August 13 and December 18, 1915, and August 30, 1916.

In the Superior Court the cases were tried together before *Chase,* J. The evidence and the exceptions taken at the trial to the admission of certain evidence are described in the opinion. At the close of the evidence the defendants asked the judge to order verdicts for them in each of the cases. The judge refused to do this, and thereupon the defendants asked the judge to make the following rulings, besides others that were made by the judge as requested:

"4. If at the commencement of the tenancy of the tenant, the Workingmen's Co-operative Bank, the elevator in question was equipped with the instantaneous type of safety device, the defendants as landlords owed no duty to change that type of safety de-

vice; to that extent at least the tenant took the premises as it found them.

"5. If at the commencement of the tenancy of the tenant, the Workingmen's Co-operative Bank, the elevator in question was equipped with the instantaneous type of safety device, and if the jury believe that, even though that type of safety device is properly adjusted, it may work unevenly in the sense that one side catches on the guide rail before the other, the defendants are guilty of no breach of duty in the use of such type of safety [device].

"6. If at the commencement of the tenancy of the tenant, the Workingmen's Co-operative Bank, the elevator in question was equipped with the instantaneous type of safety device, the defendant landlords owed no duty to change that type of device for another type, as for example, the compression type, even though the jury may believe that the instantaneous type of safety device was unsuitable for an elevator such as was elevator No. 4.

"7. In any event, if the jury believe that the elevator in question was installed by a reputable dealer in elevators and when so installed was equipped with such safety devices or other apparatus as required by law, and that, after such installation, the defendants by a suitable system of inspection exercised reasonable care to keep the elevator in a reasonably safe condition, the defendants are not liable to the plaintiffs."

"9. There being no dispute that, at the commencement of the tenancy of the tenant, the Workingmen's Co-operative Bank, the elevator was equipped with the instantaneous type of safety device, the plaintiffs cannot hold the defendants responsible for any injuries arising out of the ordinary use of such type of device.

"10. If the defendants had installed upon the elevator in question such speed governors and safety devices as are called for by law, no duty existed to furnish any other governors or safety devices.

"11. The defendants owed no duty to furnish any better or safer or other safety device than that required by law, that is, by the elevator regulations framed by the board of elevator regulations.

"12. If the defendants had installed upon the elevator in question such speed governors and safety devices as were called for by the elevator regulations and if the defendants exercised a reason-

able degree of care in seeing that the elevator as thus equipped was kept in repair and suitable condition for safe operation, the defendants discharged their full duty."

"14. If the jury believe that the plaintiffs' accident came about because the safety device operated as it would reasonably be expected to operate, no liability attaches to the defendants.

"15. It is only in case the jury believe that the accident to the plaintiffs happened because the defendants failed to exercise reasonable care in keeping the elevator with its devices as actually installed at the commencement of the tenancy of the tenant, the Workingmen's Co-operative Bank, in the condition in which it then was or appeared to be, that the defendants are liable.

"16. If the jury believe that the safety device was tripped for some reason which could not be discovered by a reasonably careful inspection, no liability attaches for injuries resulting from the operation under such circumstances of the safety device.

"17. The doctrine of *res ipsa loquitur* has no application to the case at bar.

"18. The plaintiffs may rely upon the doctrine of *res ipsa loquitur* only if the jury believes that they have made an unsuccessful attempt to prove by direct evidence the precise cause of the accident.

"19. The defendants' duty in respect to the elevator in question is that of due care, to keep it in such condition as it was in or purported to be in at the time of the letting, but they are not bound to change the mode of construction.

"20. If, at the time of the letting, the elevator was equipped with the instantaneous type of safety device, the defendants were not bound to change that mode of construction and substitute some other form of safety device."

"22. If the jury believe that over a course of years from 1901 or 1902 to 1915 the elevator in question had safely carried thousands of passengers, making daily in the vicinity of three hundred safe round trips, the jury are warranted in believing that the defendants have furnished a reasonably safe elevator.

"23. If the jury believe that before the accident to the plaintiffs the elevator had been daily in constant successful operation, without accident or any interruption which would reasonably cause apprehension of any imperfection in device or safeguards against

accident, the jury are warranted in believing that the defendants have furnished a reasonably safe elevator."

The judge refused to make any of these rulings except so far as they were embodied in his charge to the jury, the material parts of which are described in the opinion. The defendants excepted "to that part of the charge which submits to the jury on the evidence the fact, as bearing upon the defendants' negligence, that there were other devices for cars for high rates of speed which the defendants might have used."

They also excepted "to that portion of the charge which submits to the jury the question as to whether or not the defendants were exercising reasonable care in not having another form of device."

They also excepted "to that portion which left it for the jury to say whether the defendants should have discarded the old for the new, and that it was all a question of due care as to the kind of device," and "to that portion of the charge in which the jury were told that, if the device operated as intended, the defendants might still be liable."

The defendants also excepted to the "illustration about the automobile."

They also excepted "to that portion of the charge in which the jury were told that merely because the device operated as intended and thus prevented more serious injury, this would not absolve the defendants from blame if they were negligent in causing the device to be put into operation."

They also excepted to a portion of the charge to the effect that, "even if the device was in perfect operating condition and did operate and no negligence existed, and the device operated properly, if the defendants negligently caused the car to descend at such speed as to make it dangerous to operate the device, the defendants are liable."

They also excepted "to the use of the illustration dealing with the safety switch on the railroad line."

They also excepted "to that portion of the charge which says the doctrine of *res ipsa loquitur* applies."

The jury returned a verdict for each of the plaintiffs, for the plaintiff Lillian A. Draper in the sum of $4,000, for the plaintiff John J. Callahan in the sum of $2,500, for the plaintiff Charles E. Callahan in the sum of $5,500, for the plaintiff Patrick J. Hartnett

in the sum of $1,000 and for the plaintiff Edward Draper in the sum of $150. The defendants alleged exceptions.

Another action for injuries received in the same accident is described in *Waters* v. *Cotting*, 227 Mass. 405.

*E. C. Stone*, for the defendants.

*R. Spring*, for the plaintiffs.

BRALEY, J. The first four plaintiffs, to whom reference hereafter will be made as the plaintiffs, sue for personal injuries suffered while riding in a passenger elevator owned and operated by the defendants, while the fifth action is brought by the husband of Mrs. Draper for expenses incurred because of the harm to his wife.

The following material facts are not in controversy: The rooms in the defendants' building, consisting of eleven stories, were let to tenants for use as offices and shops, to which access could be had by passenger elevators, over which as well as over the connecting stairways the defendants retained exclusive control. On the day of the accident the plaintiffs were in the building doing business with a co-operative bank, a tenant whose office was on the tenth floor. The business being completed, they entered the elevator for the purpose of departing from the premises, and the car was started by the operator. But, instead of descending in the ordinary way, it shot downward with "great violence," inclining to one side, causing the car to be substantially wrecked when it came to a stop at a point approximately level with the third floor. It had been installed upon completion of the building and used for some twelve years or more; but no inspection ever had been made to ascertain whether the instantaneous safety device, which was designed to act simultaneously with equal restraining force on the rails on each side of the well, remained in an effective working condition, so that the car, even when descending at a normal maximum speed of five hundred feet a minute, could be sufficiently and instantly checked so as to ensure the safety of passengers.

It is stated, that, whether the safety device was in proper working order, could be ascertained only by an examination of the entire apparatus; and, evidence having been offered from which it could be found that the elevator would not have fallen as described unless the appliances therewith connected had

been "out of order in respects which could have been discovered by reasonably careful inspection," the plaintiffs were entitled to go to the jury. *Waters* v. *Cotting,* 227 Mass. 405. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582. *Moylon* v. *D. S. McDonald Co.* 188 Mass. 499. The request for a directed verdict was rightly denied.

The defendants also excepted to the admission of evidence from which the jury could find that the safety device was an obsolete and improper appliance, because an improved compression safety device had been in common use for quite a period before the accident, by the operation of which the car, if so equipped, would have come to a gradual, instead of a precipitate stop, and the accident avoided. And asked for rulings variously phrased, that, if at the date of the letting the elevator had a safety device, they were under no obligation to change the mode of construction or to substitute or provide some other or better form of mechanism, even if the substitution might have caused the car to be more stable, more easily controlled and uniformly more safe.

We consider this evidence as relating to the time when the bank became a tenant, under whose rights the plaintiffs were lawfully on the elevator, and the duty the defendants owed to the tenant measures the duty they owed to the plaintiffs. *Baum* v. *Ahlborn,* 210 Mass. 336. *Follins* v. *Dill,* 229 Mass. 321. *Marwedel* v. *Cook,* 154 Mass. 235, 236. *Mikkanen* v. *Safety Fund National Bank,* 222 Mass. 150, 153. It is not contended that the condition of the elevator is referred to in the lease, and there is evidence warranting a finding that the type of safety device attached to the elevator could "only be discovered by a careful inspection of the mechanism at the top of the elevator well and on the bottom of this car made by a person familiar with the construction and operation of elevators." If the device was defective, it also could be found to be a hidden defect for which the defendants are responsible as defined in *Andrews* v. *Williamson,* 193 Mass. 92. The defendants under the lease were charged with the duty of exercising due care in providing and maintaining an elevator reasonably safe for passenger service under the conditions of operation appearing in the record. *Shattuck* v. *Rand,* 142 Mass. 83. *Gibson* v. *International Trust Co.*

177 Mass. 100, 103.  It was said in *Ogden* v. *Aspinwall,* 220 Mass. 100, 105, where the plaintiff, an employee of a tenant, suffered personal injuries while riding on a defective elevator provided by the defendants for the use of tenants, that the instructions of the trial judge, when defining the defendant's due care, that, "It must be the care which is equal and proportionate to the probable harmful consequences that may follow from the lack of its exercise," were "undoubtedly correct." The defendants therefore, while not required to use any particular appliance, were bound to exert every reasonable effort to secure safety.  It is settled that where, as in the present cases, the question is whether the use of a particular kind of mechanical device or appliance by the defendant can be found to be negligent, the "possibility and the ease or difficulty of procuring something different which is safer and better are important facts bearing upon it.  That something safer has been invented and is in common use is ordinarily a fact of considerable significance.  Evidence of this kind is often received in such cases." *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579.  The evidence was properly admitted.  If the jury found that there was another, better and safer appliance in common use at the beginning of the bank's tenancy, which if installed probably would have averted the accident, they were to determine under suitable instructions, to what extent, if at all, the failure of the defendants to avail themselves of it tended to show negligence. *Myers* v. *Hudson Iron Co.* 150 Mass. 125, 137, 138.

The exception to the refusal to give the seventh request having been waived, the fourth, fifth, sixth, ninth, fourteenth, fifteenth, sixteenth, nineteenth and twentieth requests, except as modified and given, were rightly denied.  The jury were accurately instructed in substance, that the defendants were bound to use ordinary care to ascertain whether the safety device was reasonably safe for the purposes for which it was designed and intended, and thereafter to see that it was maintained in a reasonably safe condition. *Shattuck* v. *Rand, Ogden* v. *Aspinwall, ubi supra.*

The instructions as to the effect of the tenant's acceptance of the elevator in the condition it appeared to be in, and the duty of the defendants not only to provide, but to maintain, a properly equipped elevator for the tenant's use, when operated at the

speed named, were accurate and appropriate. *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, 441, and cases cited. *Andrews* v. *Williamson, ubi supra.* The judge said, if the elevator was "apparently and obviously defective and such defect could or should have been seen by any of the tenants at the beginning of his tenancy, there is an implied understanding . . . that the tenant would take the elevators in the condition in which they apparently were and in the condition in which the tenants should have seen an obvious condition .if such an obvious defect existed. But, if the elevators were apparently safe at the time a particular tenant took occupancy, then the landlord assumed the duty of keeping the elevators not only apparently safe, but actually safe during the course of that tenant's occupancy; and it would be no defence to the landlord if as a matter of fact the elevators were defective and dangerous by reason of the landlord's negligence, to say that the elevators at the time when an accident occurred by reason of which liability was sought to be attached to the landlord, were in the same condition at the beginning of the tenant's occupancy. If they were apparently safe when the tenant began occupancy, the landlord must use reasonable care to keep them safe; and, if they were in fact unsafe at the time when they were apparently safe, it was the landlord's duty nevertheless during the occupancy of the particular tenant to put them in a safe condition and to use reasonable care to keep them so. . . . The tenant has a right to rely on the conditions as they were apparently. If there is . . . an obvious defect . . . there is an implied understanding that the tenant takes things as they are . . . the landlord may let premises in any condition in which they happen to be and . . . he is under no obligation to change their structure and their general condition; . . . the tenant who takes them takes them in the condition in which they apparently are and cannot complain subsequently because they are not better. So then, so far as the tenants are concerned and so far as these plaintiffs are concerned, . . . if there was no reason for the tenants to believe that they were not safe, if there was no obvious condition which apparently rendered them unsafe," it was the landlord's duty "to keep the elevators in a safe condition and to use reasonable care and diligence to effect that." And when referring to the type of device used, he correctly instructed the jury, that "The

question is, whether it was a proper device, taking into account the speed at which it was adjusted to go into operation, because the whole complaint here is, as you have clearly in mind, that, because the speed of the car was so great, the checking system taking operation instantaneously, caused the car to be wrecked and caused the plaintiffs to be injured. . . . You have, of course, in considering whether or not the defendants were warranted in having this device upon the car, to consider the question of whether or not in so doing they were exercising reasonable care with reference to the safety of passengers. You may consider, as the plaintiffs ask you to, whether or not there were other devices which were adapted to effect the same purpose without danger to the occupants of the car. . . . Of course, it is true that merely by reason of the fact that a new and improved device has been invented, persons who are using an older device, which was in common use and which up to the time of the invention of the new device has been considered reasonably proper and safe, are not obliged the moment that the new device is invented to discard the old and tried device for the new and untried. It is a question of when, if a new and improved device is invented, those who have occasion to use such a device in the exercise of due care for the safety of those who may be injured in that respect are called upon to discard the old and adopt the new. It is a question of reasonableness. . . . It is all a question of using reasonable care, reasonable prudence, proper foresight, in protection of the welfare of those to whom duty is owed." *Dolan* v. *Boott Cotton Mills,* and *Myers* v. *Hudson Iron Co., ubi supra. Hill* v. *Winsor,* 118 Mass. 251, 259.

The defendants introduced in evidence a portion of the regulations of the board of elevator regulations relating to the installation of speed governors connected with safety devices of power elevators, and by the tenth, eleventh and twelfth requests they asked for rulings, that, having installed such governors and safety devices "as are called for by law," they "owed no duty to furnish any better or safer or other safety device than that required by law, that is," by the regulations promulgated by the board of elevator regulations. But these regulations only required the attachment of speed governors. While the board recommended the use of the compression type, it left the choice of safety devices to the

judgment of the owner and operator. The defendants of course were bound to comply with the regulations. But the question, as the judge told the jury, under instructions sufficiently favorable, was not, whether they had complied, but, whether the device used, when properly connected with the speed governor, was reasonably safe. *Ogden* v. *Aspinwall, ubi supra.*

The twenty-second and twenty-third requests, that, as "thousands of passengers" had been safely transported for quite a number of years, during which the elevator had been constantly in operation without an accident or interruption, the defendants had furnished a reasonably safe elevator, could not have been given. The defendants' due care in their relations to the plaintiffs was a question of fact on all, and not a portion, of the evidence. *Gettins* v. *Kelley*, 212 Mass. 171.

We discover no error in the denial of the seventeenth and eighteenth requests, that the doctrine of *res ispa loquitur* was inapplicable, or in the instructions, that, "If, according to your experience, you find that an accident or an event such as this does not ordinarily happen except through negligence on the part of the persons having control of the elevators, and who have charge of them, then you may infer from the happening of the accident itself that it was caused by the negligence of the persons having control of the elevators, even although you are unable to point out and specify in what particulars that negligence exists. That is to say, if you find that the most reasonable inference to draw from the happening of the accident itself is, according to your experience, that it happened through the defendants' negligence, then the law permits you to draw that inference if the accident is otherwise unexplained and no sufficient cause has been produced for its occurrence. . . . Of course, this rule has no operation if you find that the cause of the accident has been explained to your satisfaction by the evidence." The defendants do not contend that they intended to provide and did provide a passenger elevator to be operated at high speed unequipped with an instantaneous safety device, or that they were indifferent whether the device was in such repair that it could be depended upon in an emergency. The elevator was installed, maintained and held out to tenants as a means of transportation, the employment of which in the usual way, and under obvious conditions, did not involve or presage

according to common experience a substantial break down. The jury well could find that, while it was being used in the customary manner, its collapse and partial demolition occurred, and this fact. of itself until explained was sufficient for the application of the doctrine, as amply pointed out in *Cleary* v. *Cavanaugh,* 219 Mass. 281, *Cain* v. *Southern Massachusetts Telephone Co.* 219 Mass. 504, *Feeley* v. *Doyle,* 222 Mass. 155, and *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509.

The plaintiffs, as the jury were further and properly instructed, still carried the burden of satisfying them on all the evidence that the defendants were guilty of negligence. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527, 536. The exceptions to the instructions are found in the colloquy between the court and counsel, which comprises eight quarto pages of the record. The accuracy of the charge as an exposition of the law applicable to the essential issues of fact is to be determined from all the judge said, and not from detached portions. *Adams* v. *Nantucket,* 11 Allen, 203. *Hamilton* v. *Boston Elevated Railway,* 213 Mass. 420, 423. It is unnecessary to go into details which have been fully considered in the discussion of the instructions relating to the questions raised by the requests. The defendants' obligations to the plaintiffs, and what the jury must find before they could say negligence had been proved, as well as the tenant's assumption of obvious conditions but not of concealed defects or of an elevator which could be found to have been inherently unsafe were sufficiently stated in terms in conformity with *Shattuck* v. *Rand,* 142 Mass. 83, *Wright* v. *Perry,* 188 Mass. 268, *Andrews* v. *Williamson,* 193 Mass. 92, and *Ogden* v. *Aspinwall,* 220 Mass. 100.

The defendants also excepted to certain illustrations used in connection with the instructions as to their liability, if they were found to have been negligent, although the consequences from the elevator's fall were less disastrous than they might have been if it had not been equipped with a safety device. The instructions were as follows: "The safety device was intended to prevent the car dropping to the bottom of the well. If the safety device was caused to operate through negligence of the defendants, the fact that the safety device, considering its operation solely by itself, operated as it was intended to operate and properly, would not absolve the defendants. It is pretty difficult perhaps for me to

make that point clear. I seem to be having some difficulty about it although it is pretty clear in my mind. For instance, suppose you were driving your automobile through the streets and you suddenly applied the brake. You were driving at such a speed when you suddenly applied the brake that the car came to a violent and sudden stop causing injury to some one. Now if you were negligent in getting into a position where it was necessary for you to apply the brake so suddenly you would be chargeable with the consequences of your negligence, even although your brake, applied, worked properly, did just exactly what you meant it to do and did the work for which it was intended. That is, a man who gets into an emergency by reason of his negligence cannot escape the consequences of that negligence by reason of the fact that, being in that emergency, he does the best thing and may be takes a course of action which results in less damage being done than might have happened if he had not performed that act. That is, to apply it to this case again, merely because the instantaneous device operated and operated in the way in which it was intended to operate and thus prevented more serious injury from happening than did happen, in this particular case, it would not absolve the defendants from blame if they were negligent in causing the safety device to come into operation. What I am trying to say is, even although so far as the safety device on the car is concerned it was in perfect condition, and there was no negligence on the part of the defendants with respect to· it alone, yet, if they negligently permitted the car to descend at such a speed as to put that safety device into operation, they would be responsible then for the results of their negligence. To use another illustration which occurs to me, to make the point a little more clear. Suppose that a railroad track is equipped with a safety turnout, a safety switch, as most of them are; two trains are approaching each other and a collision is inevitable unless the switch is turned; the switch is turned through the operation of some safety device; the result is that one of the trains is thrown out on to the switch and ditched, resulting in injury to many passengers. If those trains were permitted by the negligence of the persons in charge of them and responsible for their operation to be upon the same track so that the danger of a collision was imminent, they would be responsible for that negligence, even although the injury that in fact occurred

through the operation of the safety device was not nearly as great as would have occurred if there had been no safety device."

A presiding judge may use illustrations for the purpose of more pointedly directing the attention of the jury to the questions they are to decide. It is a matter of discretion not to be reviewed unless prejudicial error is positively shown, which is not found in the present record. *Commonwealth* v. *Johnson,* 188 Mass. 382, 387, and cases cited. It is urged that the second illustration was extremely harmful, because it impliedly imposed upon the defendants the duty of a common carrier of passengers. But the preceding instructions which elaborately stated the character and scope of the defendants' responsibility were repeated more briefly but substantially, immediately thereafter, and there is no ground for complaint that the jury misunderstood the instructions, or were misled by the illustrations. *Adams* v. *Nantucket,* 11 Allen, 203.

A majority of the court are of opinion that, the defendants having failed on a full examination of the record to establish any reversible error requiring a new trial, the order in each case must be

*Exceptions overruled.*