EDGAR W. RUSS AND CARL C. KING  (George W. P. Jerrard Co.)

*vs.*

EASTMAN CAR COMPANY.

Aroostook.    Opinion March 23, 1923

*Where there is no direct evidence of negligence it may be proved and established by legal inferences and presumptions drawn from undisputed facts and cir-.cumstances, under the doctrine of "res ipsa loquitur."*

The defendant's brief states the issue as follows: "The burden of proof is on the plaintiffs to show that the defendant was negligent."

Upon the issue, as thus framed, the burden of proof is upon the plaintiffs to show that the defendant's negligence in its care of the heating apparatus in the car was the proximate cause of the burning of the car and consequently, of communicating the fire to the potato house.

The evidence unequivocally proves that the fire was communicated to the potato house from the burning car.

Although the evidence is conclusive that the fire originated from the stove in the heater car, there is no direct evidence whatever as to what happened to the heating apparatus that caused it to communicate the fire to the body of the car.

The negligence of the defendant must, therefore, be proved from the inferences and presumptions based upon the facts and circumstances found in the case.

This brings us to the question as to whether from the undisputed facts can be drawn a legal inference of the negligence of the defendant. To establish such inference, the plaintiff invokes the doctrine of res ipsa loquitur.

From the fact that the stove in a heater car is intended to burn continuously for quite a length of time and from the fact that there is no evidence that it does, as a matter of fact, or as a custom, communicate fire to the car, we are of the opinion that the present case clearly falls within the doctrine of res ipsa loquitur; that the communication of fire by the stove in the car was such an accident "as in the ordinary course of affairs does not happen if those who have the management use proper care."

On report. An action to recover damages for the destruction of the plaintiffs' potato house and contents which occurred December 16, 1916, the plaintiffs alleging that the fire communicated to the building from a burning heater car of defendant standing on a siding of the Bangor & Aroostook Railroad Company at the California Road, so called, in the town of Limestone. At the close of the testimony, by agreement of the parties, the cause was reported to the Law Court, under a stipulation that in the event the plaintiffs were entitled to recover the amount of damages was to be $20,197.00. Judgment for plaintiffs for $20,197.00.

The case is fully stated in the opinion.

*L. C. Stearns and A. S. Crawford*, for plaintiffs.

*Taber D. Bailey and O. L. Keyes*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

SPEAR, J. This is an action on report against Eastman Car Company to recover damages for destruction of plaintiffs' potato house and contents in December 1916, by a fire communicated from a burning heater car standing on the California Siding, at the California Road, in Limestone. The plaintiffs claim that the fire was caused solely by the defendant's negligent operation of the heating apparatus in the car, for which it is liable; and it is agreed that if this action can be maintained the plaintiffs' damages shall be assessed at $20,197.00.

The defendant's brief states the issue as follows: "The burden of proof is on the plaintiffs to show that the defendant was negligent.

"The plaintiffs ordered this car set at their storehouse. They had used these heater cars right along. They must have known that there was some risk in having them brought to their storehouse. No doubt plaintiffs knew the manner in which the heater cars were

looked after. Defendant claims that when plaintiffs ordered a heater car set at their storehouse, they assumed some risk. Any agency or implement containing fire is an agency of more or less danger.

"The defendant Company has certain employees to look after the heating apparatus on the cars, and also to keep a proper supply of oil. The particular car in question came to Caribou, which is a railroad centre for the Bangor & Aroostook Railroad. At that centre was stationed Mr. Frank Caulkins to look after cars that came into Caribou to be used there, or on branches of the railroad starting from there. He had other men under him. The car was inspected there and allowed to go on to Limestone. If the heating apparatus on the car was not working all right, Mr. Caulkins would not have allowed it to proceed, but would have held it at Caribou to be repaired or adjusted. After receiving the report of the men who examined it, he allowed it to go along. That is prima facie evidence that the car was in good order."

In view of the foregoing statement of facts, the defendant claims that the following principles of law apply:

1. It is presumed that men have acted in good faith and in conformity with their duty.

Several cases are cited in support of this principle.

2. When a fact, relation, or state of things continuous in its nature is shown to exist, it is presumed to continue until the contrary is shown.

Several cases are also cited in support of this principle.

From these principles he draws the following conclusion: "The heating apparatus on the car was in good condition when it left Caribou. Defendant claims that it is presumed to continue so until it is proved to the contrary."

Upon the issue, as thus framed, the burden of proof is upon the plaintiffs to show that the defendant's negligence in its care of the heating apparatus in the car was the proximate cause of the burning of the car and, consequently, of communicating the fire to the potato house. The evidence unequivocally proves that the fire was communicated to the potato house from the burning car. The heater was burning in the car when the car left Caribou and was calculated to burn continuously to the siding where it was to be loaded, and, as a matter of necessity, to its place of destination where the potatoes

were to be delivered. The car was set upon the siding in front of the potato house about nine o'clock in the morning. It was not warm enough in the forenoon for the reception of potatoes. A little after noon, the employees at the potato house commenced to load and at about four o'clock had put four hundred bushels of potatoes into the car. The car was then closed in the usual way. At the same time the potato house was closed and locked. The heater, a small, kerosene stove, was located in an asbestos lined box underneath the middle of the car. When the cover was shut down over the heater, the box was automatically locked. No person connected with the potato house had a key to that box. The only key to it, so far as the evidence shows, was in the possession of the defendant or its agents. About a quarter past twelve in the morning, the first person who arrived at the fire, testified that the bottom of the car was burned through so that potatoes were dropping out and that the clapboards on the outside of the potato house were just beginning to burn. When other people arrived they attempted to move the car along the track, but were unable to do so. And on account of the heavy wind that was blowing directly from the burning car to the potato house, they were unable—because of the heat and flame—to do anything to save the house.

Although the evidence is conclusive that the fire originated from the stove in the heater car, there is no direct evidence whatever as to what happened to the heating apparatus that caused it to communicate the fire to the body of the car. Edgar W. Russ, being requested to give a description of how the cars are heated and what fuel is used, testified substantially as follows: That the fuel is kerosene oil, and it is something on the principle of any kerosene oil stove, only the fuel comes down to it from a pipe; that is, it is piped down from a tank; it is right in the centre of the car—right underneath; it is boxed by itself; asbestos lined box; the burner was very much like the burner of any oil stove; it is larger over, that's all; it might be four inches across it and perhaps a little more; there is a vent for the smoke to go out through; in order to light the burner you have to open the door of the box. The apparatus appears to have been of the kind approved and in general use.

The negligence of the defendant must, therefore, be proved from the inferences and presumptions based upon the facts and circumstances found in the case.

The defendant invokes the inference as a presumption of fact that, inasmuch as the heating apparatus was inspected at Caribou and found all right, the presumption is that it continued to be all right to the time of the fire, so far as the defendant could be made responsible for the exercise of reasonable care. The only testimony presented by the defense as a basis for the presumption above invoked was the evidence of the inspection of the heating apparatus at Caribou, but that evidence does not seem sufficient to support the presumption. The agent of the company, whose duty it was to inspect the heating apparatus, delegated the duty of inspection to two of his men, who made a report to him, but what that report was does not appear; neither of the men was called. While the inference may be reasonable that the men to whom was delegated the duty inspected the car and reported their inspection to the agent, we are, nevertheless of the opinion that the court, acting as a jury, is not authorized, upon the testimony, to hold such inference equivalent to evidence of that fact. What the men said was properly excluded, which left the testimony as follows: Q. "They reported the car to you, did they?" A. "Yes, sir." Q. "And you authorized the cars to go along?" A. "The car was supposed to go through anyhow; the hot car."

This brings us back to the question as to whether from the undisputed facts can be drawn a legal inference of the negligence of the defendant. To establish such inference, the plaintiff invokes the doctrine of res ipsa loquitur, that, since the heating apparatus which caused the injury had been shown to have been under the management of the defendant, and since the fire was such as in the ordinary course of affairs does not happen, if those who have the management use proper care, the accident, itself, affords reasonable evidence, in the absence of an explanation by the defendant, that it was caused by lack of proper care by the defendant. It may be said here, that no explanation was offered by the defendant. In support of the doctrine of res ipsa loquitur, the plaintiffs cite the following cases: Volume 1, Shearman and Redfield on the law of negligence (5th Edition) Section 59, in which it is said: "In many cases, the maxim res ipsa loquitur applies. The affair speaks for itself. The accident, the injury, and the circumstances under which they occurred, are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. Proof of an injury, occurring as the proximate result of an

act of the defendant, which would not usually, if done with due care, have injured anyone, is enough to make out a presumption of negligence. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of due care."

In *Leighton* v. *Dean*, 117 Maine, 40, our court say: "When a thing which has caused the injury is shown to be under the management of the party charged with negligence, and the action is such as in the ordinary course of affairs does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it was caused by the lack of proper care by the party charged with negligence." That was a case in which the injuries were caused by a falling awning. In *Stevens* v. *European and North American Railway*, 66 Maine, 74, it was said, "Cars can ordinarily be run with safety, and when they are not, that fact itself is evidence of fault or defect somewhere, requiring explanation. The maxim res ipsa loquitur applies in such a case." The foregoing quotation was approved and applied in *Herbert* v. *Portland Railway Company*, 103 Maine, 315. Those were cases of railway accidents.

In *Berry* v. *Atlantic Railway*, 109 Maine, 330, a railway accident, it was said: "The burden of explanation then falls upon the defendant operating the railway." And here it is further said, "In this case no explanation is attempted. We must regard the defendant's liability as established." This doctrine has also been applied in the following cases: *St. Louis* v. *Bay State Railway*, 216 Mass., 255; *Draper* v. *Cotling*, 231 Mass., 51; *Melvin* v. *Pennsylvania Steel Company*, 180 Mass., 196. The last was a case in which a chisel fell from a platform upon which workmen were engaged, striking upon the head of the plaintiff, without any evidence whatever as to why, or how, the chisel fell. The court said, "In the absence of any evidence from the defendant to explain the facts relied on, the jury might well find for the plaintiff."

*Kearner* v. *Tanner Co.*, 31 R. I., 203, was a case in which there was an explosion of dust in a starch factory, and the court said, "As the business is entirely within the control of the defendant, and its method

of manufacturing starch may be good, bad, or indifferent, it is called upon to explain when a fatal explosion occurs within its premises."

In *Jordan* v. *Giant Powder Company*, 107 Cal., 549, involving an explosion of nitroglycerine in a dynamite factory, the court say, "The real cause of the explosion being unexplained, it is probable that it was occasioned by a lack of proper care."

From the fact that the stove in a heater car is intended to burn continuously for quite a length of time, and from the fact that there is no evidence that it does, as a matter of fact, or as a custom, communicate fire to the car, we are of the opinion that the present case clearly falls within the doctrine of the foregoing cases; that the communication of fire by the stove in the car was such an accident "as in the ordinary course of affairs does not happen if those who have the management use proper care."   The case is almost in equilibrium, yet in the absence of explanation, under the well-settled rules of law, we are of the opinion that the plaintiffs have sustained the burden of proof.

*Judgment for the plaintiffs*
*for $20,197.00.*