JANE SOUDEN, administratrix, *vs.* FORE RIVER SHIP BUILDING COMPANY.

Norfolk.    March 15, 1916. — April 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Negligence,* Employer's liability, On a steamship, *Res ipsa loquitur. Ship. Death. Conflict of Laws. Jurisdiction. Evidence,* Presumptions and burden of proof, Matter of conjecture.

If one, employed upon a ship upon the high seas owned and operated by a Massachusetts corporation, receives injuries resulting in his death, the questions, whether any, and, if any, what action can be maintained under the circumstances, are determined by the common law and the statutes of this Commonwealth.

In this action to recover for the death of an employee upon a steamship caused by the explosion of a boiler tube, after a review of the evidence it was *held,* that there was evidence upon which findings were warranted, either that the explosion was due to a defective condition of pumps which fed water to the boiler, or to improper action of apparatus which fed oil as fuel, or to both causes, and that such defective condition was known or in the exercise of reasonable care should have been known to those in control of the ship for the employer, that therefore the cause of the explosion was not left to conjecture, and that the question of the defendant's liability was for the jury.

At such trial, the fact that the explosion occurred while the boiler was being subjected to the use for which it was designed was *held* to be in itself evidence of a defective condition.

It also was *held,* that, while the plaintiff was bound to offer evidence to show that the explosion was caused by negligence of the defendant, he was not required to point out the particular act or omission which caused the accident.

It also was *held* that proper inspection of the boiler tubes was, in the present case, a duty of the defendant which could not be delegated, so that, if the performance of that duty was left by the defendant to a fellow servant of the plaintiff's intestate who was negligent and whose negligence caused the death, the defendant would be liable.

It also was *held,* that, upon the evidence in the present case, the question, whether there had been negligence in the performance of the duty of inspection, was for the jury.

CROSBY, J. This is an action of tort, brought to recover for the conscious suffering and death of the plaintiff's intestate, who, while in the defendant's employ on November 5, 1909, received an injury which resulted in his death on the following day.

The declaration contains seven counts. The first, fifth and sixth are based upon the common law, and the second, third, fourth and seventh are under the employers' liability act. The third count is to recover for the death of the plaintiff's intestate, and alleges a defect in the condition of the ways, works or machinery of the defendant, in conformity with the employers' liability act. It is agreed that a sufficient notice under the act was served by the plaintiff upon the defendant. The presiding judge of the Superior Court * ruled that the plaintiff could not recover and ordered a verdict for the defendant and reported the case to this court, the parties stipulating that, "If that ruling is right, the judgment for the defendant stands. If it is wrong, it is agreed that judgment for $4,000 be entered for the plaintiff."

The accident which resulted in the death of the intestate occurred on board the battleship North Dakota on her trial trip, while she was engaged in a speed test from Rockland, Maine, in the direction of Provincetown upon the high seas after she had reached the waters of Massachusetts Bay. The defendant is a Massachusetts corporation, and at the time of the accident the battleship was in its charge and control. The plaintiff's intestate was employed as a coal passer on the ship, and was working in that capacity at the time of the accident.

1. It is settled that in case of a death occurring upon the high seas, an action may be maintained to enforce a remedy given by the State where the vessel is owned, — and as the intestate was killed while on the high seas in a vessel belonging to a Massachusetts corporation, it was within the territorial jurisdiction of Massachusetts, and the rights of the parties are to be determined by the common law and the statutes of this Commonwealth. *The Hamilton*, 207 U. S. 398. *La Bourgogne*, 210 U. S. 95.

2. Upon the evidence the jury would have been warranted in finding that the plaintiff's intestate was in the exercise of due care. He was seventeen years of age and apparently his only work con-

---

* *Brown*, J.

sisted in carrying and shovelling coal. We do not understand that the defendant contends that he was lacking in due care.

3. The accident was due to an explosion of a tube or tubes in one of the boilers of the ship in the fire room where the intestate was working, by reason of which he was burned and scalded and died from his injuries the following day. There is no evidence to show that he knew or could have known of the condition of the tubes or appreciated the risk of an explosion, and therefore it could not have been ruled that he assumed the risk. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172. There was no evidence to show that the defective conditions existed before he entered upon his employment, and so there was not a contractual assumption of the risk; and as to defects which arose afterwards, it could not have been ruled that he assumed them; besides it is to be noted, that the defence that the intestate assumed the risk, has not been pleaded. *Leary* v. *William G. Webber Co.* 210 Mass. 68.

4. The question left for determination is whether there was any evidence from which it could have been found that the defendant was negligent. The battleship North Dakota had been constructed by the defendant for the government of the United States, and was engaged in a trial trip at the time of the explosion. There was evidence that the ship had been in or near Rockland Harbor for several days before the accident, and on that morning had made some runs before her speed test trip began. She was provided with four main feed pumps and four auxiliary feed pumps for supplying water to the boilers. There was evidence to show that some of the main feed pumps were in a defective condition on the day of the accident and also on the day before it occurred, and that they did not furnish sufficient water for the boilers; that one or two of them broke down before the trial trip began; "that within two hours previous to the accident the main feed pumps, upon which the supply of water to the boilers depends, were very erratic in their action; that at several times during this period two of them were not functioning, that the action of the pumps was so erratic and unreliable that they were reported against; that two of the main feed pumps could not possibly furnish the water for a full speed trial, because they had not the capacity; that two pumps broke down during the speed trial."

It could have been found that the defendant's officers and agents in control of the ship knew, or in the exercise of reasonable care would have known of the defective condition of the pumps. There was also evidence that about twenty minutes after the explosion the boiler gauge glasses in the fire room where the explosion occurred did not show any water in three of the boilers; that if the pumps failed to supply an adequate amount of water to the boiler tubes, it would cause the tubes to burn and blow out. This evidence, if believed, would justify the jury in finding that the explosion was due to a defective condition of the pumps, and was wholly independent of any negligence of the water tender, who was a fellow servant of the intestate, in failing to keep a sufficient supply of water in the boilers.

It appeared in evidence that the ship was equipped with an oil fuel system, by means of which oil was sprayed in the form of a cone into the furnace, for the purpose of intensifying the heat made by coal fires under the boilers; that the boiler tube which exploded was directly in line with the oil sprayer; that the place where this tube burst was subject to an undue and excessive heat and that such heat might cause the tube to burst. There was also evidence to show that the fuel oil system was not completed at the time the ship left for her trial trip, and that the system had not been properly tested before being put into actual operation. There was expert testimony to the effect that the explosion was due either "to low water in the boiler or to the action of the oil fuel in not spraying properly from the nozzle and impinging at that particular point on the tube, causing overheating, bulging and rupture."

In view of this evidence, the cause of the explosion is not left to conjecture as the defendant contends. The jury would have been justified in finding that it was the result of one or both of the causes before referred to. If so, there was evidence of negligence.

The fact that the explosion occurred while the boiler was subject to the use for which it was designed is of itself evidence of a defective condition. *Cleary* v. *Cavanaugh*, 219 Mass. 281. *Sullivan* v. *Reed Foundry Co.* 207 Mass. 280. *Minihan* v. *Boston Elevated Railway*, 197 Mass. 367. While the plaintiff was bound to offer evidence to show that the explosion was caused by the defendant's negligence, he was not required to point out the partic-

ular act or omission which caused the accident. *Ryan* v. *Fall River Iron Works,* 200 Mass. 188. *Byrne* v. *Boston Woven Hose & Rubber Co.* 191 Mass. 40. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196, 202.

There was evidence to show that no inspection of the boiler tubes had been made either on the day of the accident or on the preceding day, although it could have been found that such inspection should have been made and, if made, would have readily disclosed the defective and dangerous condition of the tubes. We are of opinion that the jury could have found that such failure to inspect amounted to negligence on the part of the defendant. If the duty of inspection rested upon those who were fellow servants of the plaintiff's intestate and they failed to perform that duty, still the defendant is responsible because proper inspection is an obligation which cannot be delegated to a servant so as wholly to excuse the master. *Moynihan* v. *Hills Co.* 146 Mass. 586. *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119. *White* v. *Newborg,* 208 Mass. 279.

In view of what has been said, it is unnecessary to consider all the issues raised by the report.

We are of opinion that it could not properly have been ruled that there was no evidence to warrant a finding that the defendant was negligent, but that this question was for the jury to determine as a matter of fact.

In accordance with the terms of the report, let the entry be

*Judgment for the plaintiff for $4,000.*

*P. R. Blackmur & R. Spring,* for the plaintiff.

*J. Lowell, (J. A. Lowell* with him,) for the defendant.