Joseph Cambra *vs.* Manuel C. Santos & others.
Frank Souza *vs.* Same.

Barnstable.  March 7, 17, 1919. — May 24, 1919.

Present: Rugg, C. J., De Courcy, Crosby, Pierce, & Carroll, JJ.

*Jurisdiction. Workmen's Compensation Act. Fishing Voyage. Ship. Negligence,* Employer's liability. *Partnership.*

It here was *assumed,* without any question on the subject being raised, that a member of the crew of a fishing schooner, employed by the master as agent for himself and the other owners, if injured while on board the vessel in Boston Harbor by reason of the negligence of such master and owners, can maintain an action of tort at common law in a court of the Commonwealth against the owners of the vessel, and that, his injury being a maritime tort, the workmen's compensation act has no application to it.

In an action of tort at common law against the master and owners of a fishing schooner by a member of the crew for personal injuries sustained from an explosion of gasoline, when it was being put into the gasoline tank of the schooner in Boston Harbor, there was expert evidence that there should be no fire or light, except an electric light, in the vicinity of any place where gasoline is handled,

stored or used, that every storage tank should be provided with a vent pipe ending in a gooseneck and that gasoline should not be transferred from one place to another in open containers, and there was evidence that when the explosion took place the gasoline for the schooner was being passed along by the crew in open five gallon cans and emptied into the tank and that about one hundred gallons had been transferred in this manner, that there was no vent pipe in the tank, that in the cabin and the engine-room there were two lighted kerosene lamps and that there was a coal fire in the stove, the door of which was open, that the gasoline vapor could have arisen from the movement of the open cans while being passed along and under the existing weather conditions could have found its way to the partly opened companionway and down into the cabin, or that by reason of the absence of a vent pipe the residual vapor in the tank was forced out as the gasoline was poured in and passed down the space between the metal tank and the wooden casing through an opening in the deck at the pipe or elsewhere into the cabin and the engine-room below. *Held,* that there was evidence that the plaintiff was set at work without warning in a place which could have been found to have been peculiarly dangerous under the circumstances.

In the case above described it also was *held* that the question, whether the responsibility for the negligence was confined to the master as employer or owner *pro hac vice,* or was that of all the owners as partners in the enterprise, for whom the master was the agent, was a question for the jury on the evidence.

In the same case it appeared that the plaintiff was employed on a Provincetown lay, but there was evidence that the lay or share to which each member of the crew was entitled was a mere measure of compensation for services and that the members of the crew had no control over the schooner or over the disposal of the fish caught and that they could be discharged by the master at any time, and it was *held* that there was evidence that the plaintiff plainly was an employee and that the shares given to him and the other members of the crew did not create a partnership.

In the same case it was *held* that the questions of the due care of the plaintiff and of his assumption of risk were for the jury with the burden of proof on the defendants.

In the same case it was *held* that it could not have been ruled that the master of the schooner, whether he was the owner of the schooner *pro hac vice* or was acting as the agent of all the owners, was a fellow servant of the plaintiff, and that the responsibility for the defective and dangerous condition of the permanent and essential appliances to which the employees were exposed in performing their required work could not be delegated by their employer or employers.

TWO ACTIONS OF TORT, each by a member of the crew of the fishing schooner Mary C. Santos registered in Provincetown, against the master and the owners of that vessel, for personal injuries respectively sustained by the plaintiffs in the afternoon of February 24, 1916, in Boston Harbor from an explosion of gasoline. Writs dated June 25, 1917.

The answers of the defendants in each of the cases, in addition to a general denial, alleged that the plaintiff was not in the exer-

cise of due care but was guilty of negligence which contributed to his injury.

In the Superior Court the cases were tried together before *Cox*, J. The facts which could have been found upon the evidence are stated in the opinion. At the close of the evidence the defendants in each of the cases filed a motion that a verdict be ordered for them. The judge granted the motions, and in each of the cases ordered a verdict for the defendants. Thereupon he reported the cases for determination by this court, with the stipulation that, if the judge was right in ordering verdicts for the defendants, final judgment was to be entered for the defendants in each of the cases; otherwise, that the cases were to stand for trial.

*J. D. W. Bodfish*, for the plaintiffs.

*E. C. Stone*, for the defendants, submitted a brief.

DE COURCY, J. These two common' law actions of tort were brought to recover damages for personal injuries received by the plaintiffs, resulting from a gasoline explosion which occurred on board the fishing schooner Mary C. Santos, while she lay in Boston Harbor. The plaintiffs were members of the crew of the schooner.

The defendants were the owners of the schooner, namely, Manuel C. Santos, the captain in charge, owning twenty of the thirty-two equal shares, Joseph A. Manta, the agent, owning five shares and seven other persons owning one share each. When the vessel was built in 1904 she was equipped with sail power only. In the cabin were two kerosene lamps for lighting, and a coal stove for heating purposes. In 1914 an auxiliary gasoline engine was added, the only change in the construction of the schooner being what was incidental to the installation of the engine and its equipment. The engine was placed forward of the original cabin, "the engine-room and cabin were all one," and no change was made in the above mentioned method of lighting or heating. The gasoline storage tank was placed on the deck directly above the engine. It was made of metal, and was enclosed in a wooden casing, with an intervening space of four or five inches. The only openings provided were two in the top of the tank, and corresponding ones in the box over it, through which gasoline was poured into the tank. The gasoline was supplied to the engine through a pipe which extended from the bottom of the tank through an

opening in the deck. It passed through the cabin and engine-room, about three and five feet from the two kerosene lamps respectively. The coal stove was about eight feet from the gasoline engine; and the pipe, engine, lamps and stove were all in the same room.

The plaintiffs were hired by the captain, the defendant Santos, and the schooner was operated on what was called the Provincetown lay. When the captain landed his load of fish and sold it, he first deducted certain charges, called "great generals," which included bait, trawls, gasoline and all other supplies bought by him for the boat, except the food; then he took out twenty-seven per cent for the owners of the schooner, and sent it to the defendant Joseph A. Manta, as their agent; the remaining seventy-three per cent, after payment of the food bills or "small generals," was divided in equal shares among the crew, including the captain. The plaintiffs had no control over the schooner or the disposal of the fish caught; the captain was in full command and could discharge the members of the crew at any time; they had a right to quit, if they so desired, whenever the boat came in and the cargo was discharged; and they received as compensation for their services the lay or share of the proceeds of the trip.

In the afternoon of February 24, 1916, after the fish had been unloaded and some repairs made on the engine, the Mary C. Santos was towed out to a gasoline supply boat, the Smith-Tuttle, which was stationed in Boston Harbor. The captain ordered the plaintiffs, with other members of the crew, to assist in taking in a supply of gasoline. The men formed a line between the storage tank on the fishing schooner and the supply faucet on the gasoline boat, and the gasoline was passed along in five-gallon cans, and emptied into the tank. About one hundred gallons had been so transferred, when the explosion which injured the plaintiffs occurred in the cabin and engine-room below. It was then about four o'clock. It could be found that the explosion must have been caused by gasoline vapor, mixed with air in such proportions that it would explode, coming in contact with some flame in the cabin and engine-room. There was evidence that at about three o'clock two kerosene lamps were seen lighted there and that there was a coal fire in the stove, the door of which was open. The gasoline vapor could have arisen from the movement of the

open cans while being passed along, and under the weather conditions it could have found its way to the partly opened companionway and down into the cabin. Or, it could be found that, by reason of the absence of a vent pipe, the residual vapor in the tank was forced out as gasoline was poured in, and passed down the space between the metal tank and the wooden casing, through an opening in the deck at the pipe or elsewhere, into the cabin and engineroom below. According to the testimony of the expert witness, Wedger, there should be no fire or light except an electric light, in the vicinity of any place where gasoline is handled, stored or used; storage tanks should be provided with vent pipes ending in a gooseneck, and gasoline should not be transferred from one place to another in open containers.

Confining ourselves to the alleged structural defect in the tank and appliances, there was evidence here of negligence in setting the plaintiffs at work without warning in a place which could be found peculiarly dangerous in the circumstances. *Maddox* v. *Ballard*, 218 Mass. 55. It was for the jury to say whether responsibility for this negligence was confined to Santos alone, as employer or as owner *pro hac vice* or was that of all the defendants as partners in the enterprise, having a common ownership, controlling the vessel through their agents, and sharing the profits and losses at the end of each trip. *Harding* v. *Souther*, 12 Cush. 307. *Adams* v. *Augustine*, 195 Mass. 289. *Crimmins* v. *Booth*, 202 Mass. 17. *McMurtrie* v. *Guiler*, 183 Mass. 451.

Plainly there was evidence that the plaintiffs were employees; that the lay or share given to them was in the nature of wages and did not create a partnership. *Baxter* v. *Rodman*, 3 Pick. 435. *Grozier* v. *Atwood*, 4 Pick. 234. The issues of their due care and assumption of risk were for the jury, with the burden of proof on the defendants. *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509. St. 1914, c. 553. It could not be ruled that the fellow servant doctrine precluded the plaintiffs from recovery; the defendant Santos was the employer of the plaintiffs, either as owner *pro hac vice* or as agent of all the owners, and responsibility for the defective and dangerous condition of the permanent and essential appliances to which the employees were exposed in performing their required work cannot be delegated by the employer. *Perry* v. *Webster Co.* 216 Mass. 147.

It may be added that no question is raised as to the jurisdiction of our courts to enforce the common law rights of the plaintiffs. See *Calvin* v. *Huntley*, 178 Mass. 29. The Judicial Code of the United States, U. S. St. 1911, c. 231, § 256. And see *Duart* v. *Simmons*, 231 Mass. 313, as to the workmen's compensation act.

In our opinion the plaintiffs were entitled to go to the jury on the evidence; and in accordance with the report the cases are to stand for trial.

*So ordered.*