HARRY A. CARPENTER *vs.* SINCLAIR REFINING COMPANY.

Norfolk.    December 7, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence*, In use of gasoline, Failure to warn.

At the trial of an action of tort for personal injuries caused by a fire in the defendant's gasoline pump house when the plaintiff, an employee of a pump manufacturer, was assisting employees of the defendant in installing a pump, there was evidence tending to show that the defendant was engaged in the business of storing and selling gasoline, that, the gasoline pump in the pump house failing to work, he sought a new pump from the plaintiff's employer, who stated to him that he did not have gasoline pumps but did have water pumps, that the defendant decided to use a water pump and that, at the defendant's request, the plaintiff was sent by his employer to assist in installing such a pump; that the pump was operated by electricity controlled by a rheostat from which sparks might be emitted when the electric current was broken; that while the plaintiff and employees of the defendant were installing the pump, several gallons of gasoline were spilled upon the floor, causing a highly inflammable vapor of mixed gasoline and air to arise; that, the pump not working, the plaintiff operated the rheostat to break the current, a spark was emitted, a fire was caused and the plaintiff was burned; that the plaintiff was familiar with the installation of water pumps and in that connection with rheostats and the use of them in starting and stopping motors, but that he had had no previous experience with gasoline pumps and knew nothing of the danger of operating the rheostat when gasoline vapor was in the room; and that the defendant did not warn him of the dangers attending the work. *Held*, that

(1) In the circumstances the defendant owed to the plaintiff the duty to

warn him of the dangers incident to his work which the defendant knew or should have known of, and which the plaintiff did not know of or appreciate and could not reasonably have discovered;

(2) The use of the rheostat could have been found to have been incidental to the work which the plaintiff was on the defendant's premises to perform;

(3) It could not have been ruled as a matter of law that negligence of the plaintiff contributed to his injury;

(4) The danger to the plaintiff being concealed and not obvious, it could not be ruled as a matter of law that he assumed the risk of his injury;

(5) It could not have been ruled that the plaintiff as to the rheostat was a mere licensee;

(6) The mere fact, if it be a fact, that sparks from the rheostat had not caused an explosion on a previous occasion, did not relieve the defendant of his duty to warn the plaintiff;

(7) There was evidence warranting a finding that the defendant was negligent in not warning the plaintiff of the danger of the accident which caused his injury.

TORT for personal injuries resulting from a fire in the defendant's gasoline pump house while the plaintiff, an employee of J. Comer Jones Power and Pump Company, was assisting in installing a new pump. Writ dated July 12, 1918.

In the Superior Court, the action was tried before *Keating*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The defendant asked, among others, for the following rulings:

"1. Upon all the evidence, the plaintiff was not in the exercise of due care.

"2. Upon all the evidence, the operation of the rheostat by the plaintiff was the proximate cause of his injuries.

"3. There is no evidence of any negligence upon the part of the witness Ratigan.

"4. There is no evidence of any negligence upon the part of the witness McLaren.

"5. There is no evidence of any negligence upon the part of the person described as Mr. Hall.

"6. If the jury find that the plaintiff's injuries were caused by the negligent manner in which he operated the rheostat, the plaintiff is not entitled to recover."

"11. There is no evidence of negligence upon the part of the defendant."

The presiding judge granted the sixth and denied the other

requests. There was a verdict for the plaintiff in the sum of $5,650; and the defendant alleged exceptions.

*E. C. Stone, J. M. Morrison & G. Gleason,* for the defendant, submitted a brief.

*W. R. Sears, (C. M. Gordon* with him,) for the plaintiff.

CROSBY, J. This is an action of tort to recover for personal injuries arising out of an explosion on January 21, 1918, in the pump house, so called, on the defendant's premises, while the plaintiff, an employee of J. Comer Jones Power and Pump Company of Boston, at the request of the defendant was installing a pump. The plaintiff contends that he was injured because of the negligence of the defendant in failing to warn him of the dangers connected with the work, and to which he was likely to be exposed. The case was submitted to the jury on the seventh count which was at common law for failure to warn.

The jury were warranted by the evidence in finding the following facts, most of them being undisputed: The pump house was a small building in which there was an electric pump and a motor to operate it, and a device or switch known as a rheostat to start and stop the motor. The pump was used to pump gasoline from tank cars standing on an adjacent side track to storage tanks on premises of the defendant. The premises are situated in that part of Boston known as Allston. They were in charge of one Hall, and on the day of the accident one Ratigan was employed as a yard man. The defendant was engaged in the business of storing and selling gasoline, oil and other petroleum products. The pump that had been in use having failed to work, Hall requested J. Comer Jones of the J. Comer Jones Power and Pump Company to install a new one; Jones told him that they did not have gasoline pumps but did have water pumps, and that Hall could take one of them if he so desired. Hall said to send it out, that there was no need of sending any tools because they had their own, that if Jones could let him have a man to help him he would appreciate it; and Jones replied that he would send a man to assist his (Hall's) men in any way he could. Thereafter the pump was taken to the defendant's premises, and the plaintiff was sent by Jones to help set it up. The work was done with the assistance of Ratigan and one McLaren, also in the employ of the defendant. In removing the old pump and in attempting to start the new one, several

gallons of gasoline were spilled on the floor of the pump house. After the new pump had been installed, Ratigan started the motor by means of the rheostat and McLaren called out that it was not pumping; at that time the plaintiff, who stood beside the motor and rheostat, reached up and unhooked the catch on the rheostat, letting the handle drop back; immediately there was a flash from the rheostat and instantly the whole of the inside of the building was on fire.

A witness called by the plaintiff as an expert testified that, if a considerable quantity of gasoline was spilled on the floor of the pump house with one door open but with no other opening, and nothing had been done to remove it, and two or three hours later the electric motor was started by the rheostat, and in a few minutes the lever connected with it was allowed to drop back, following which a fire burst forth in the building, he was of opinion that the fire was caused by a spark from the rheostat which "had touched off a highly inflammable mixture of gasoline vapor and air." This witness further testified that, generally speaking, there is no spark when a current is closed, but when opening a current there is always a more or less heavy spark; that owing to the construction of the rheostat sparks therefrom are not readily seen, and that generally one is not apt to see much of any spark provided the contacts are clean and it is operated normally; that if not clean the amount of sparking is increased.

The plaintiff testified that he had never worked in the presence of gasoline vapor and knew nothing of the dangers of shutting off an electric current by means of a rheostat when gasoline vapor was present in a building; that he had had no experience with gasoline pumps, but was familiar with the installation of water pumps, and in that connection with rheostats and the use of them in starting and stopping motors; that he had never noticed a spark from their use; that the pump was not working, and in order to prime it he was obliged to stop the motor; that he did so on this occasion by unhooking the catch on the rheostat and letting it drop back; that immediately "there was a flash from the rheostat and everything [was] in a blaze."

The defendant offered evidence to show that before the explosion the plaintiff removed a cap on top of the pump while the motor was running; that when the cap was removed gasoline in

large quantities was thrown all over the building; that the motor was then stopped by Ratigan and afterwards was started by him; that when it was discovered that the pump was not working the plaintiff, instead of unhooking the catch, reached up and grabbed hold of the handle, and that with his hand on the handle it was not possible to release the spring. As the plaintiff denied that he did any of these things, it was for the jury to find the facts.

It is the contention of the defendant that the plaintiff was guilty of contributory negligence; that it was not within the contemplation of the parties that he should use the rheostat; that in doing so he was at most a mere licensee; that the explosion was caused by his improper use of it; that the danger was open and obvious; and that he assumed the risk of injury.

At the time of the accident, the plaintiff was the employee of an independent contractor; he was on the defendant's premises by the defendant's invitation, and under these circumstances it owed him the same duty that it owed to one of its own employees; that duty was to warn him of the dangers incident to his work which he did not know of or appreciate, and could not reasonably have discovered; and which dangers the defendant knew or should have known. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288. *Crimmins* v. *Booth,* 202 Mass. 17. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172. The defendant could not delegate its duty to warn the plaintiff respecting obscure and concealed dangers. *Perry* v. *Webster Co.* 216 Mass. 147. *Cambra* v. *Santos,* 233 Mass. 131, 135.

In the performance of his work of installing the pump the plaintiff was required not only to place it in the pump house, but it might reasonably be inferred that it was a part of his duty to put it in running order to pump the gasoline; to determine whether it would do that work it was necessary to test it by putting it in operation; the only method by which this could be done, so far as shown by the evidence, was to start the motor by means of the rheostat, which was there for that purpose; and its use by the plaintiff could have been found to have been fairly incidental to the work he was there to perform.

Although the plaintiff was familiar with installing water pumps, there is no evidence that he had had any previous experience in installing gasoline pumps under the conditions existing at the

time of the accident; it could have been found that at the time in question the pump house was filled with gasoline vapor which would be likely to explode if it came into contact with an electric spark. While the evidence showed that when the current of electricity was shut off by means of the rheostat it would emit a spark, it could have been found that that fact was not known to the plaintiff, and could not have been discovered by him upon reasonable examination. It follows that it could not have been ruled that negligence on his part contributed to the injury, or that he was not in the exercise of due care; these issues were for the jury.

Nor could it have been ruled as matter of law that the plaintiff assumed the risk. The evidence if believed clearly showed that the danger was not obvious but concealed, and that he was allowed to do his work without warning of the peril of using the rheostat under the existing conditions. *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509. *Cambra* v. *Santos, supra.* Besides, the defence that the plaintiff assumed the risk has not been pleaded. *Leary* v. *William G. Webber Co.* 210 Mass. 68.

The contention of the defendant that in using the rheostat to stop the motor the plaintiff was at most a mere licensee is untenable. There was no testimony to show that the operation of the rheostat at the time of the accident was in the sole charge of the defendant's employees or that the plaintiff was not to be permitted to use it if required to do so. It could have been found that these employees and the plaintiff were invited to use it in the performance of the work, and that the plaintiff was not a volunteer or intermeddler.

There was evidence from which the jury could have found that the defendant was negligent. A finding would have been warranted that owing to a large quantity of gasoline having been spilled on the floor of the pump house, gasoline vapor was present, and that to operate the rheostat with its tendency to emit sparks when the current was shut off, under the circumstances was likely to be attended with serious consequences; and that the defendant knew or should have known that a spark might ignite and cause an explosion and injury result therefrom. Consequently the jury could have found that the defendant was negligent in failing to warn the plaintiff of the danger of which he should have been in-

formed. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227. *Maddox* v. *Ballard,* 218 Mass. 55. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151. *Cambra* v. *Santos, supra.*

The circumstance that sparks from the rheostat had not previously caused an explosion did not relieve the defendant from warning the plaintiff of the peril involved in its use, in view of the dangerous conditions. It may be that on previous occasions large quantities of gasoline had not been spilled on the floor and that there was less liability of an explosion. *Delaney* v. *Framingham Gas, Fuel & Power Co.* 202 Mass. 359, 362. While the defendant contends that it had no knowledge that sparks would be emitted from the rheostat, yet there was evidence that that fact was known by those familiar with its use. The defendant, having maintained it on its premises to be operated by persons who rightfully had occasion to do so, was bound to know of the dangers connected therewith and to warn those persons who were ignorant of such dangers.

The presiding judge gave the defendant's sixth and seventh requests; the ninth was waived; the others need not be considered in detail; they were covered by the charge so far as properly they could have been given.

There was no error in the admission or exclusion of evidence, and the exceptions thereto cannot be sustained. The instructions to the jury were accurate and adequate, and the exceptions taken to parts of the charge must be overruled.

We perceive no error in the conduct of the trial.

*Exceptions overruled.*