MILTON ARTZ vs. WILLIAM A. HURLEY.

Hampden.    September 20, 1956. — November 5, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Negligence*, Leakage of water, Toilet, One owning or controlling real
estate, Res ipsa loquitur. *Water*.

Evidence that a crack in a plastic float of a near-ceiling toilet water tank
on an upper floor of a business building let water into the float so that
it finally became submerged and failed to close the water intake valve,
and that the overflow pipe for some unexplained reason failed to carry
off the excess water, with the result that water overflowed the tank
and damaged property on the floor below, but not showing that there
was any outward indication of a defect in the tank before the overflow-
ing, did not warrant a finding of negligence on the part of the one in
control of the upper floor premises toward the owner of the damaged
property in that there was no inspection of the tank during a number
of weeks before the overflowing. [608–609]

An unexplained overflowing of water from the tank of a toilet did not
warrant a finding of negligence under the doctrine of res ipsa loquitur
on the part of the person in control of the toilet toward a person whose
property was damaged by the overflowing. [609]

TORT.    Writ in the Superior Court dated September 18,
1950.

The action was tried before *Leary, J.*

The case was submitted on briefs to *Wilkins*, C. J., *Spald-
ing, Williams, Counihan, & Whittemore*, JJ., and afterwards
was submitted to *Cutter*, J.

*Edward N. Hurley*, for the defendant.

*Harry M. Ehrlich & J. Leo Dowd*, for the plaintiff.

WHITTEMORE, J.    The jury found for the plaintiff in this
action of tort to recover for property damage caused by the
escape of water from second floor premises occupied by and
in the control of the defendant onto first floor store prem-
ises of the plaintiff.   There is here presented the defendant's
exception to the denial of his motion for a directed verdict.

The escaping water was discovered a little after 7 A.M. February 16, 1950. It was traced to the near-ceiling water tank over a seat in one of two toilet rooms on the defendant's premises. These premises were used for roller skating, dancing, and basket ball. The evidence taken most favorably to the plaintiff permitted the jury to find that the flooding was due to a crack two and one half to three inches long in the mechanism's plastic ball or float which had let water into the ball with the result that it had remained submerged and had not operated, as designed, to close the water intake valve as water rose after the flushing of the toilet and the closing of the bowl-flushing orifice. The diameter of the overflow pipe in the tank was one and one quarter inches. The diameter of the intake pipe was three eighths of an inch. The difference "was sufficient to take off water coming in the tank unless foreign matter got in the pipe." There was opinion testimony that "some foreign matter or obstruction could have gotten in the overflow." The crack in the float was "unusually deep," rust had collected on the break, and, judging by its appearance, the crack could have been there "for some time," and it could have been gradually increasing in size and gradually admitting water to the interior of the ball. "There was no way in which the crack could have been anticipated and no steps could have been taken to prevent its occurring." One plumber testified that "If the crack was slowly . . . [admitting water] the water would leak every day a little more . . . I would apply that over the course of weeks." Another plumber answered "I wouldn't know" when asked whether the crack could have been there "a year, six months, three months, [or] two months." There was no testimony that, prior to the morning of February 16, water had been running through the overflow pipe and into and through the bowl when the mechanism was not put into use, or that any leakage had occurred. The testimony of the defendant's employee that he had inspected for running water and flushed the toilet after the roller skating customers left at 11:15 P.M. on February 15 and that the water stopped run-

ning after the flushing might have been disbelieved but this would not establish the contrary fact. It is good plumbing practice to use plastic floats. Both plastic and copper floats will crack; there is no way to prevent it. A plastic or a copper float may last three weeks or fifteen years. "[T]here is trouble with all plumbing. You can look at a float today, be perfectly normal, tomorrow that float will be gone." The defendant's employee did not know prior to February 16 whether there was a crack in the float.

There is no such duty to inspect pipes buried in the ground that negligence can be inferred from escape of contents due to defects which inspection would have disclosed. *A. DaPrato Co.* v. *Boston, ante,* 186, 188, and cases cited. The mere escape of water from a system in the defendant's control is not evidence of negligence. *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180. *Fibre Leather Mfg. Corp.* v. *Ramsay Mills, Inc.* 329 Mass. 575. For cases of damage from unexplained flooding of water closets see, accord *Bernhard* v. *Reeves,* 6 Wash. 424, contra *Angerman Co. Inc.* v. *Edgemon,* 76 Utah, 394, but in that case there was overnight notice of leakage; compare as to notice *A. DaPrato Co.* v. *Boston, supra,* page 188.

In the circumstances here lack of reasonable care as to inspection cannot be inferred from the evidence. The description of the crack and the opinion of what may have happened establish at most an absence of inspection for a number of weeks. Whether the crack existed for a longer period is conjectural. It must be ruled that absence of inspection for a period of weeks could not be found unreasonable or careless. The issue of whether negligence can be inferred from the crack alone was not for the jury. *Pinney* v. *Hall,* 156 Mass. 225, 226. See *Sylvester* v. *Shea,* 280 Mass. 508, 509–510; *Horne* v. *Boston Consolidated Gas Co.* 332 Mass. 312, 315. It is not necessary to decide whether it can be said as a matter of law that there is no duty on the proprietor of business premises ever to examine the interior of accessible water tanks equipped with discharge mechanisms which may give trouble if not in good work-

ing order, so long as there is no outward evidence of defect.

Nor need we decide whether in some circumstances the addition of the fact of the failure of the overflow pipe to operate could furnish a basis for the inference. In the circumstances here it cannot be said that this failure was "more likely attributable to negligence on the part of the defendant than to some other cause." *Couris* v. *Casco Amusement Corp.* 333 Mass. 740, 742. There was no suggestion in the evidence of what could have caused the assumed obstruction in the pipe. The obstruction if present was manifestly extraordinary. Guesses as to it would include gradual corrosion of or deposits on the metal through long contact with water or something thrown or falling into the tank. The jury could not reasonably decide on the evidence here that guesses suggestive of the defendant's lack of care are in any degree more reasonable than other hypotheses. The premises were legally in the exclusive control of the defendant, and he would be held to the exercise of due care in respect of use by his customers. But we cannot say that this could extend to nightly inspection of the ceiling-height tank to see if by horseplay, design or extraordinary occurrence, a foreign body had come therein.

In the opinion of a majority of the court it cannot be said that the overflow of the tank, unexplained in fact, is the sort of accident which commonly does not happen where due care is used. See *Couris* v. *Casco Amusement Corp.* 333 Mass. 740, 741. Mere possibility of an explanation predicated in negligence is not enough to take the issue to the jury. *Marcus* v. *Griggs, Inc., ante,* 139, 143. On the evidence the crack in the float cannot be taken as any suggestion of negligence and we do not come to a consideration of the significance of the concurrence of two phenomena each possibly to be explained by negligence. In the *Couris* case the doctrine of res ipsa loquitur was applied to the sudden collapse of a theatre seat and the finding on the floor of a bolt from the seat. But in such a case the possibility of a loose or

weakened bolt due to roughhousing, undetected in the exercise of reasonable supervision, or to intentional act of a third person was greatly less than the possibility that carelessness in maintaining or inspecting was the cause.

*Exceptions sustained.*
*Judgment for the defendant.*