JOSEPH L. LONG *vs.* JOSEPH J. KAPLAN & another.

Plymouth. November 7, 1956. — December 3, 1956.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Heavy object, Res ipsa loquitur.

In an action by one who had gone to the defendant's premises with a truck for a bale of rags, a finding of negligence on the part of the defendant toward the plaintiff was not warranted by evidence of the bale's slipping or falling in loading into a position with one corner on the truck and another on a nearby fence, and of efforts of the defendant to move it with a rope and a fork lift while the plaintiff and others pushed it, culminating in its falling upon the plaintiff.

TORT. Writ in the Superior Court dated September 6, 1950.

There were verdicts for the plaintiff at the trial before *Fairhurst*, J., and the defendants alleged exceptions.

*Joseph J. Walsh,* (*Christopher W. Sloane* with him,) for the defendants.

*Michael J. Dray,* for the plaintiff, submitted a brief.

WHITTEMORE, J. These are the defendants' exceptions to the denial of their motions for directed verdicts in an action of tort. The motions should have been allowed, as the evidence is insufficient to permit a finding of negligence.

The plaintiff was employed as a truck driver by a firm engaged in the waste paper business. On the day of the accident he was on the premises of the defendants, who

were partners in the junk business, to pick up certain bales
of rags. A bale, while being loaded onto the truck, fell or
slid to the side and came to rest "with one corner on the
truck and the other upper-hand corner" on a fence which
was parallel to the side of the truck and from four to four
and one half feet therefrom. The fence was seven or eight
feet high, and the floor of the truck was three and one half
to four feet above the ground. "[O]ne edge was resting on
the truck but there was a ridge on the truck to prevent it
from sliding." The defendant Joseph Kaplan caused an
employee of the defendants to tie a rope "onto the upper
corner of the bale" or "on the top part of the bale" and he
himself tied the rope to the fork lift which had been used
to move the bale, and then backed the fork lift across the
truck. This caused the bale to move somewhat. According
to the plaintiff, and on the view of the evidence most favor-
able to him, while the bale was balanced on the edge of the
truck and held off the fence by the taut rope "and on a
slant," Kaplan told the plaintiff and two of the defendants'
employees to "get out in the yard and push it as I try to
pull it with the machine"; the plaintiff then got under the
bale with the defendants' employees on each side and
pushed; the fork lift was operated and the bale rocked up
and down; this went on for a minute or so and "after about
a minute, he [the plaintiff] felt the bale going up and then
felt it coming back down where they couldn't hold it at
the time, and then the other two men disappeared and the
bale was coming down on top of him."

The defendants were liable to the plaintiff for the conse-
quences of their own negligence and that of their employees
"in respect to risks not ordinarily incidental to obviously
existing conditions." *Engel* v. *Boston Ice Co.* 295 Mass.
428, 432–433. *Carpenter* v. *Sinclair Refining Co.* 237 Mass.
230, 234. We cannot say, however, from the fact that the
bale fell that it is more likely that this happened because
of negligence in the operation of the fork lift than that it
resulted from the shifting or slipping of the bale or rope or
from other change in the precariously unstable equilibrium

in which the bale, obviously, was held, not related to the defendants' lack of due care. Whether or not the jury believed the defendants' very different version of the accident,[1] there was no basis here for inferring negligence. *Gilmore* v. *Kilbourn*, 317 Mass. 358, 363. *O'Meara* v. *Adams*, 283 Mass. 396, 402. See *Artz* v. *Hurley*, 334 Mass. 606. Compare *Couris* v. *Casco Amusement Corp.* 333 Mass. 740.

> *Exceptions sustained.*
> *Judgments for the defendants.*

---

[1] The defendant Joseph Kaplan testified that after the abortive first effort with the fork lift he and the plaintiff exchanged some words and he then shut off the motor on the fork lift "and watched what they were going to do"; that the plaintiff was giving orders to the defendants' two employees; that the three men were trying to twist the bale onto the truck; that the bale was still resting against the fence, the rope was not taut and the fork lift was not operating; and that he "heard someone hollering" and he jumped down and saw the bale fall. The testimony of the two employees tended to corroborate the testimony of Joseph Kaplan.