Helen R. QUINN
vs.
TOWN OF BELMONT

District Court Department
Appellate Division, Northern District
Trial Court of the
Commonwealth of Massachusetts

April 23, 1980

</div>

Philip S. Iuliano for the plaintiff.
Robert J. Morrissey for the defendant.

ZOLL, J. This is an action in tort to recover for damages to personal property which allegedly resulted from a ruptured water pipe.

At trial there was evidence tending to show that:

At 3:30 a.m. on January 22, 1978, the plaintiff was advised by firemen that water was escaping into her home from the adjacent street. The plaintiff's basement was at that time flooded to a depth of seven inches. The Water Department of the Town of Belmont sent a repair crew to the street to close gates and to cut off certain outlets. After attempting to remedy the problem, it was assumed that all necessary outlets had been closed, and the

repair crew left the area to respond to another emergency.

All controlling gates and outlets had not been closed, however, and water continued to flow into the plaintiff's home for several additional hours. The defendant's repair crew was required to return to the area, locate the proper cutoff and stop the flow of water onto the plaintiff's premises. This was not accomplished until 9:00 a.m.

The water in the plaintiff's basement reached a maximum height of twelve inches. The plaintiff attempted unsuccessfully to remove clothing and furnishings from the cellar which had become water damaged and covered with mud. The plaintiff and her family spent several hours attempting to clean and restore this personal property, and ultimately sustained $650.00 in damages for lost furnishings and services. An additional sum of $182.50 was expended by the plaintiff as payment for the services of a cellar cleaning company.

The defendant submitted eight requests for rulings of law which were denied by the trial court as inconsistent with the trial judge's subsidiary findings. Said findings stated, in relevant part, that:

"although the pipes were constructed in 1922 and that reasonable care does not require on the part of the Town the periodical digging up of the street for the purpose of inspection, the Town was negligent in failing to shut off the water after receiving notice of the leak in the water main and in leaving the area prior to conducting a proper inspection to determine if it had properly ·stopped the flow of the water into the plaintiff's premises."

The trial court found for the plaintiff, and judgment was entered in the amount of $832.50.

The defendant is presently before the Appellate Division, claiming to be aggrieved by the denial of its requests for rulings of law numbers 1, 2, 7 and 8.

Requests for rulings numbers 1 and 2 and the trial judge's rulings thereon are as follows:

"1. A finding for the defendant is required because plaintiff has not shown that defendant was negligent with respect to the water pipe. Denied.

"2. A finding for defendant is warranted because plaintiff has not shown that defendant was negligent with respect to the water pipe. Denied. See findings."

Unless specifically provided for by statute, a municipality is not liable for negligence in the conduct of strictly public functions. As to commercial enterprises which serve a public need and which are voluntarily undertaken by a city or town for profit or to benefit corporate interests, a city or town is liable for its negligent conduct. **Sloper** v. **Quincy, 301 Mass. 20, 24 (1938).** In Massachusetts, the maintenance of a water supply system in part for the use of people who pay for the water supplied constitutes a commercial venture. **Cole Drug Co. of Mass.** v. **Boston, 326 Mass. 199 (1950); Sloper** v. **Quincy, supra.** A city or town may thus be held liable for negligence in the construction, maintenance or operation of its water supply system. **Morash & Sons, Inc.** v. **Commonwealth, 363 Mass. 612, 623 (1973); Thurlow** v. **Provincetown, 337 Mass. 450, 453 (1958); Gordon** v. **Medford, 331 Mass. 119, 123 (1954).**

The determination of whether the municipality in the case at bar failed to act with due diligence in stopping the flow of water from a broken pipe was a question of face for the trial judge. **Iver Johnson Sporting Goods Co.** v. **Boston, 334 Mass. 401, 402 (1956).** See also·**Bagdikian** v. **Worcester, 318 Mass. 707 (1945).**

Although as the defendant correctly implies, neither the mere escape of water nor a failure to expose and inspect all buried pipes alone constitutes negligence, see **Artz** v. **Hurley, 334 Mass. 606, 608 (1956); Gerard** v. **Boston, 299 Mass. 488, 489 (1938); Mervin Hat Corp.** v. **Textile Paper Tube Co., 16 Mass. App. Dec. 57, 59 (1958),** additional and sufficient evidence was introduced to sustain the trial court's finding on this issue. The report clearly states that the defendant's

repair crew closed some outlets and then left the area having simply "assumed" that the necessary water gate had been shut. The reported evidence also indicates that the repair crew eventually returned to the area, and was able to locate the broken main and to stop the flow of water onto the plaintiff's premises. Such evidence creates permissible inferences that the defect in question could have been discovered by the repair crew upon proper inspection during the first visit, and that the crew's failure to do so resulted in an actionable delay, thereby increasing the damage to the plaintiff's home. See Cole Drug Co. of Mass. v. Boston, supra at 202; Buono v. Boston, 290 Mass. 59, 62 (1935).

The defendant contends that no evidence was introduced to establish: (1) that the crew had reason to know that its initial undertaking would fail; and (2) that the crew should have been able to determine which gates to close. If the defendant's crew workers had acted with due diligence and inspected the water system, they would have discovered that their first efforts were unsuccessful. An inspection and consequent discovery of the continued flow of water would have immediately revealed to the crew that the first set of gates closed were not controlling, and that additional outlets should have been cut off. The report states that the defendant's crew was in fact able to uncover and correct the problem upon return to the area.

The defendant's claim as to the unavailability of a "proper inspection" method is equally unpersuasive. An examination of the continued flow of water into the plaintiff's home would have served as a sufficient method to determine whether the water problem had been sufficiently eliminated to warrant the departure of the defendant's crew. Finally, the fact that the crew left in response to a second emergency does not absolve the defendant of liability for leaving the plaintiff's home without taking reasonable steps to locate the broken main. The commencement of some repair work without ascertaining whether it was successful would not appear to constitute a reasonable effort or

due diligence.

The trial court's finding of negligent conduct by the defendant may be sustained on a reasonable view of the reported evidence, and must thus be upheld by this Division on review. There was no error, therefore, in the denial of the defendant's requested rulings numbers 1 and 2.

Requests for rulings numbers 7 and 8 allege that insufficient evidence was presented on the issue of damages. These requests and the trial judge's rulings thereon are as follows:

"7. A finding for defendant is required because plaintiff's evidence of alleged damages is speculative and conjectural.
Denied.

"8. A finding for defendant is warranted because plaintiff's evidence of alleged damages is speculative and conjectural.
Denied."

One of the essential components in an action for negligence is proof of proximate damage. Holland v. Good Bros., Inc., 318 Mass. 300, 302 (1945); Wallace v. Ludwig, 292 Mass. 251 (1935). In order to recover for the defendant's lack of due diligence, the plaintiff must produce evidence of the amount of damages directly resulting from the defendant's delay in repairing the defective water system. A. DaPrato Co. v. Boston, 334 Mass. 186 (1956). The report is devoid of any evidence from which that portion of the property damage attributable to the defendant's negligent conduct can be deduced. The water had reached a depth of seven inches in the plaintiff's basement at the time that the defendant was notified of the ruptured main, and the maximum water level was twelve inches. The delay of the defendant's repair crew in repairing the water main resulted in a maximum of five inches of water damage. It may be inferred that at least a portion of this quantity of water escaped onto the plaintiff's premises as a result of the defendant's inability to remedy the situation initially, for the report states that the water continued to flow for several additional hours between the first and second

appearances of the repair crew. The exact percentage of water accumulated during this period cannot be determined.

Additionally, the plaintiff did not establish what proportion, if any, of the water and soil damage to her clothing and furnishings was caused by the five inches of water at issue. The extent of the defendant's liability would depend on the nature of the personal property and its placement in the basement. Conceivably, the damage to the plaintiff's clothing and furnishings could have resulted solely from the initial seven inch flow of water into the plaintiff's basement. Alternatively, a portion of the damage could have been caused by the water which continued to flow between the time that the defendant's crew left initially and the time at which they returned and made the final repairs. As insufficient evidence was presented to accurately assess the amount of damages caused to the plaintiff's property by the defendant's negligence, in the interests of justice, we remand the matter to the trial court for a new trial restricted to the issue of damages. See **P.C.M., Inc. v. Cambridge Motor Inn, Inc.,** Mass. App. Div. Adv. Sh. (1978) 239, 249.

So ordered.
J. Zoll